**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

|  |  |
|---|---|
| DONALD J. TRUMP, in his capacity as former President of the United States,<br><br>Plaintiff,<br><br>v.<br><br>BENNIE G. THOMPSON, in his official capacity as Chairman of the Select Committee to Investigate the January 6th Attack on the United States Capitol, United States House of Representatives, *et al.*,<br><br>Defendants. | No. 1:21-cv-2679 (TSC) |

**DECLARATION OF B. JOHN LASTER**

I, B. John Laster, under 28 U.S.C. § 1746, hereby declare and state as follows:

1. I currently serve as the Director of the White House Liaison Division of the Office of Legislative Archives, Presidential Libraries, and Museum Services in the National Archives and Records Administration (NARA).  I have held this position since February 2020.  Prior to this, I was the Director of the Presidential Materials Division of NARA for seven years.  During my 25-year career with NARA, I have worked exclusively with Presidential and Vice Presidential records.  I hold a master's degree in history from Auburn University and a bachelor's degree in communications from Georgia Southern University.

2. I am responsible for administering all access requests for Presidential records that have been transferred into NARA's custody in accordance with the Presidential Records Act (PRA), as amended, 44 U.S.C. §§ 2201-2209.

3. The statements contained in this declaration are based upon my personal knowledge, upon
   information furnished to me in the course of my official duties, and upon conclusions and
   determinations reached and made in accordance therewith.

**The Presidential Records Act**

4. The PRA established U.S. Government ownership of all Presidential records, and requires
   that such records shall be transferred into NARA's custody and control when the President
   leaves office.  44 U.S.C. § 2203(g).  In general, access outside NARA to the Presidential
   records of a former President is restricted (that is to say, not permitted) for five years
   following their transfer to NARA, or until NARA completes their processing and
   organization, whichever is earlier.  44 U.S.C. § 2204(b)(2).  In addition, the outgoing
   President may specify that access to records in one or more of six statutorily defined
   categories may be restricted for up to twelve years from the end of his administration.  *Id.* §
   2204(a).  Restrictions under 44 U.S.C. § 2204(a) and (b) work in concert with eight of the
   nine Freedom of Information Act (FOIA) exemptions to limit public access to the records.
   *Id.* § 2204(c).  Former President Trump applied the 12-year restrictions to each of the six
   PRA-defined categories prior to leaving office.

5. Section 2205 of the PRA, entitled "Exceptions to Restricted Access," provides that
   "[p]residential records shall be made available" under certain circumstances specified in
   section 2205, "[n]otwithstanding any restrictions on access" imposed under section 2204.  As
   relevant here, section 2205 directs NARA to make Presidential records available "to either
   House of Congress, or, to the extent of matter within its jurisdiction, to any committee or
   subcommittee thereof if such records contain information that is needed for the conduct of its
   business and that is not otherwise available," 44 U.S.C. § 2205(2)(C), "subject to any rights,

defenses, or privileges which the United States or any agency or person may invoke," *id*.
§ 2205(2).  NARA refers to section 2205 requests as "special access requests," as distinct
from "public access requests," which remain subject to the restrictions imposed under section
2204.

6.  Upon receiving a special access request from a congressional committee or subcommittee
under section 2205 and identifying records that NARA believes are responsive, NARA then
notifies, in accordance with its regulations, at 36 C.F.R. § 1270.44, and Executive Order
13489, the representatives of the former and incumbent Presidents (collectively, the PRA
Representatives) of its intent to disclose the records to the requesting committee.  NARA
furnishes copies of the responsive records to the PRA Representatives of the incumbent and
former Presidents, so that they can review the records and consider whether the incumbent or
former President, respectively, should assert a constitutionally based privilege, such as
executive privilege, against disclosure.  NARA maintains the records in the same order and
manner of organization as they were transmitted to NARA by the outgoing administration.
To the extent practicable and necessary, NARA informs the PRA Representatives where the
responsive records came from, such as from a staff member's office files.

7.  NARA follows a separate notification process when releasing Presidential records to the
public in accordance with section 2204.  That process is governed by section 2208 of the
PRA, and the records are also subject to the restrictions in section 2204.

8.  The notification to the PRA Representatives includes a time period for the review, which is
typically 30 calendar days, although NARA's regulations state that "[t]he Archivist [of the
United States] may adjust any time period or deadline under this subpart, as appropriate, to

accommodate records requested under this section." 36 C.F.R. § 1270.44(g). NARA first notifies the representatives of the former President, and then notifies the representative of the incumbent President approximately one week later, which means that the representatives of the former President can continue their review while the incumbent review is still ongoing. Depending on the volume and complexity of the records and the need and expectations of the requesting committee, the time period allowed for review by either or both PRA Representatives may be extended beyond the prescribed time period, as part of an informal accommodations process. In addition, under section 2(b) of Executive Order 13489, the incumbent President or his designee may instruct the Archivist "to extend the time period for a time certain[.]"

9.  Depending on the complexity of the search and the volume of responsive records, NARA may provide notifications to the PRA Representatives on a rolling basis (as it is doing in this case). Similarly, as part of the accommodation process NARA may allow the PRA Representatives to conduct their review of records subject to a notification in subsets, allowing NARA to make rolling disclosures to the requesting committee, while the PRA Representatives continue to review the remaining records.

10. In the course of their review, the PRA Representatives also may seek clarification from NARA on whether specific records are responsive to a request. Upon receipt of such a request, NARA will examine the record(s), considering the issues raised by the PRA Representatives. If NARA agrees that a record is not responsive, the record is withdrawn from the notification process and is not provided to the committee.

11. On occasion PRA Representatives may also inquire regarding the identity of the authors or custodians of particular records when they are not apparent from either the faces of the

records or the surrounding files with which they were produced.  (As noted above, to the extent practicable, NARA informs the PRA Representatives which files responsive records came from.)  When it receives inquiries of this kind, NARA attempts to answer them as best it can with the information available to it.

12. Prior to this case, no former or incumbent President has asserted a constitutionally based privilege with respect to records requested under section 2205 of the PRA.  In the past, concerns raised by PRA Representatives of the incumbent or former President about the sensitivity of responsive records, or the scope of a request, have always been addressed and resolved through the accommodation process.  For example, committees have on occasion agreed to narrow the scope of their requests, and have also agreed to restrictions on the type of access provided – e.g., read-only access or committee-confidential restrictions.  Such accommodations can be negotiated with the committee by NARA or by the PRA Representatives directly.

**The January 6th Committee's Request**

13. On March 25, 2021, NARA received a special access request from the House Committee on Oversight and Reform and five other Committees seeking Trump Presidential records related to the events of January 6, 2021 (Maloney Request).  Attachment A.  On August 25, 2021, NARA received a request from the House Select Committee to Investigate the January 6th Attack on the United States Capitol (January 6th Committee) that subsumed the March 25, 2021, Maloney Request, and made additional requests (Thompson Request).  Attachment B.

14. In response to these requests, NARA conducted searches of the Trump Presidential records in its custody and control.  Although the Trump Presidential records came into NARA's legal custody on January 20, 2021, due to the complex technical work needed to transfer hundreds

of terabytes of electronic records, coupled with the limitations on advanced planning that are endemic to a one-term transition, it took until August 2021 for NARA to receive the vast majority of the electronic Trump Presidential records, with a few outstanding data sets still waiting to be transferred.  While these electronic records were being prepared for transfer to NARA, the records remained on servers controlled by the Executive Office of the President (EOP).  Accordingly, even though NARA has now received the vast majority of the electronic Trump Presidential records, NARA began its search for records responsive to the Thompson Request with the hard-copy records in our custody that we could initially identify as possibly containing responsive records.

15. During this interim period when the electronic Trump Presidential records remained on EOP's servers, NARA requested that the EOP perform a search for email records responsive to this request, which identified several hundred thousand potentially responsive records (out of a corpus of approximately 100 million emails).  NARA is now beginning to review that set of records to de-duplicate them and determine responsiveness.

**Notifications of Responsive Documents Issued to Date**

**The First Notification**

16. On August 30, 2021, NARA provided the first notification to the PRA representatives of former President Trump of its intent to disclose approximately 136 pages of records responsive to the Thompson Request, and on September 8, 2021, NARA notified the PRA representative of President Biden of its intent to disclose the same records (together, the First Notification).  NARA subsequently withdrew seven pages of records as non-responsive to the request.

17. On October 8, 2021, former President Trump informed the Archivist, David S. Ferriero, that he was asserting a constitutionally based privilege over 39 pages of responsive records subject to the First Notification.  President Trump's letter also asserted privilege over the seven pages of non-responsive records that had been withdrawn from the notification. Attachment C.

18. On October 8, 2021, the Counsel to President Biden informed the Archivist that President Biden would not uphold former President Trump's privilege claim and was not asserting a claim of privilege on any other records subject to the First Notification.  Attachment D.  Also on October 8, 2021, the Counsel to the President sent a second letter to the Archivist instructing him to provide the pages identified as privileged by former President Trump to the January 6th Committee 30 days after informing the former President, absent any intervening court order.  Attachment E.

19. On October 13, 2021, the Archivist responded to former President Trump, informing him that, after consultation with the Counsel to the President and the Acting Assistant Attorney General for the Office of Legal Counsel, and as instructed by President Biden, NARA would disclose the records in the First Notification subject to former President Trump's claim of privilege to the January 6th Committee in 30 calendar days (that is, on November 12, 2021) per 36 C.F.R. 1270.44(g), absent any intervening court order.  Attachment F.  The Archivist's letter further noted that the seven pages NARA had deemed non-responsive would not be provided.

20. On October 13, 2021, NARA disclosed to the January 6th Committee the 90 pages of records in the First Notification that were not subject to any claim of privilege.

**The Second and Third Notifications**

21. On September 9, 2021, NARA provided the second notification to the PRA Representatives of former President Trump of its intent to disclose approximately 742 pages of records responsive to the Thompson Request, and on September 16, 2021, NARA notified the PRA Representatives of President Biden of its intent to disclose the same records (together, the Second Notification).

22. On September 16, 2021, NARA provided a third notification to the PRA Representatives of former President Trump of its intent to disclose approximately 146 pages of records responsive to the Thompson Request, and on September 23, 2021, NARA notified the PRA Representatives of President Biden of its intent to disclose the same records (together, the Third Notification).

23. On October 17, 2021, the Counsel to the President – as the incumbent President's designee – instructed the Archivist to extend the incumbent's review period for the Second Notification by one week to coincide with the end of the review period for the Third Notification, and the PRA Representatives of former President Trump were afforded the same extension of time to complete their review of records under the Second Notification.

24. On October 22, 2021, former President Trump informed the Archivist that he was asserting a constitutionally based privilege over 724 of the 885 pages of responsive records subject to the Second and Third Notifications.  Attachment G.  (NARA had previously withdrawn three pages from the Second Notification, because they were not Presidential records.)

25. On October 25, 2021, the Counsel to President Biden informed the Archivist that President Biden would not uphold former President Trump's privilege claim and was not asserting a claim of privilege on any records subject to the Second and Third Notifications and instructing him to provide the pages identified as privileged by former President Trump to the January 6th Committee 30 days after informing the former President, absent any intervening court order.  Attachment H.  The Counsel to President Biden further explained that, in the course of an accommodation process between Congress and the Executive Branch, the Select Committee had agreed to defer its request for 50 pages of responsive records.

26. On October 27, 2021, the Archivist responded to former President Trump, informing him that, after consultation with the Counsel to the President and the Acting Assistant Attorney General for the Office of Legal Counsel, and as instructed by President Biden, NARA would disclose the records in the Second and Third Notifications subject to former President Trump's claim of privilege to the January 6th Committee in 30 calendar days (that is, on November 26, 2021), per 36 C.F.R. 1270.44(g), absent any intervening court order. Attachment I.

**Further Notifications**

27. On October 15, 2021, NARA provided the fourth notification to the PRA Representatives of former President Trump of its intent to disclose 551 pages of records responsive to the Thompson Request, and on October 22, 2021, NARA notified the PRA Representatives of President Biden of its intent to disclose the same records (together, the Fourth Notification).

28. NARA anticipates providing multiple additional notifications for electronic records, including email, digital photographs, and additional hard copy records, on a rolling basis as it is able to locate responsive records.

**General Nature of the Responsive Records Identified To Date**

29. I discuss below the general categories of records included in the First, Second, and Third Notifications over which former President Trump has made particularized assertions of executive privilege.  The following is not intended as a detailed description of these records on a page-by-page or even document-by-document basis.

30. <u>First Notification</u>:  The First Notification includes 136 pages of records transferred to NARA from (i) the files of Chief of Staff Mark Meadows, (ii) the files of Senior Advisor to the President Stephen Miller, (iii) the files of Deputy Counsel to the President Patrick Philbin, (iv) the White House Daily Diary, which is a chronological record of the President's movements, phone calls, trips, briefings, meetings, and activities, (v) the White House Office of Records Management, and (vi) the files of Brian de Guzman, Director of White House Information Services.

31. President Trump made particularized assertions of executive privilege over 46 of these 136 pages of records (including seven pages of records that, as noted above, had been removed as non-responsive).  He asserted privilege over: (i) daily presidential diaries, schedules, appointment information showing visitors to the White House, activity logs, call logs, and switchboard shift-change checklists showing calls to the President and Vice President, all specifically for or encompassing January 6, 2021 (30 pages); (ii) drafts of speeches, remarks, and correspondence concerning the events of January 6, 2021 (13 pages); and (iii) three handwritten notes concerning the events of January 6 from Mr. Meadows' files (3 pages).

32.  Second Notification:  The Second Notification includes 742 pages of records transferred to NARA from: (i) the files of Chief of Staff Mark Meadows; (ii) the White House Office of the Executive Clerk; (iii) files from the White House Oval Office Operations; (iv) the files of White House Press Secretary Kayleigh McEnany; and (v) Senior Advisor to the President Stephen Miller.

33.  President Trump made particularized assertions of executive privilege over 656 of these 742 pages of records.  He asserted privilege over: (i) pages from multiple binders containing proposed talking points for the Press Secretary, interspersed with a relatively small number of related statements and documents, principally relating to allegations of voter fraud, election security, and other topics concerning the 2020 election (629 pages); (ii) presidential activity calendars and a related handwritten note for January 6, 2021, and for January 2021 generally, including January 6 (11 pages); (iii) draft text of a presidential speech for the January 6, 2021, Save America March (10 pages); (iv) a handwritten note from former Chief of Staff Mark Meadows' files listing potential or scheduled  briefings and telephone calls concerning the January 6 certification and other election issues (2 pages); and (v) a draft Executive Order on the topic of election integrity (4 pages).

34.  Third Notification:  The Third Notification includes 146 pages of records transferred to NARA from (i) the White House Office of the Executive Clerk and (ii) the files of Deputy White House Counsel Patrick Philbin.

35. President Trump made particularized assertions of executive privilege over 68 of these 146 pages of records.  He asserted privilege over: (i) a draft proclamation honoring the Capitol Police and deceased officers Brian Sicknick and Howard Liebengood, and related emails

from the files of the Office of the Executive Clerk (53 pages); and (ii) records from the files

of Deputy White House Counsel Patrick Philbin, including a memorandum apparently

originating outside the White House regarding a potential lawsuit by the United States

against several states President Biden won (4 pages), an email chain originating from a state

official regarding election-related issues (3 pages), talking points on alleged election

irregularities in one Michigan county (3 pages), a document containing presidential findings

concerning the security of the 2020 presidential election and ordering various actions (3

pages), and notes apparently indicating from whom some of the foregoing were sent (2

pages).

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and

correct.

Executed this 29th day of October, 2021

BILLY LASTER  Digitally signed by BILLY LASTER
Date: 2021.10.29 19:46:23 -04'00'

B. JOHN LASTER

# ATTACHMENT A

# Congress of the United States
## Washington, DC 20515

March 25, 2021

The Honorable Ronald A. Klain
Chief of Staff
The White House
1600 Pennsylvania Avenue, N.W.
Washington, D.C. 20500

The Honorable David S. Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Avenue, N.W.
Washington, D.C. 20408

Dear Mr. Klain and Mr. Ferriero:

Our Committees are requesting records relating to the January 6, 2021, assault on the U.S. Capitol, which killed five people and injured hundreds more. Pursuant to the Presidential Records Act, specifically 44 U.S.C. § 2205(2)(C), the Committees request that you produce the following documents from the Executive Office of the President (EOP) and the Office of the Vice President (OVP) in your custody, control, or possession by April 8, 2021:

   1.   Documents and communications received, prepared, or sent between December 1, 2020, and January 4, 2021, by employees or officials of EOP, OVP or any of their components, offices, or directorates, relating to the counting of the Electoral College vote on January 6, 2021, or the potential for demonstrations, violence, or attacks in the National Capital Region on or around January 6, 2021;

   2.   Documents and communications received, prepared, or sent between January 5, 2021, and January 7, 2021, by employees or officials of EOP, OVP or any of their components, offices, or directorates, relating to the counting of the Electoral College vote on January 6, 2021, or the events of January 6, 2021; and

   3.   Documents and communications received, prepared, or sent between January 8, 2021, and January 20, 2021, by employees or officials of EOP, OVP or any of their components, offices, or directorates, relating to the events or aftermath of January 6, 2021.

In responding to this request, we ask you to prioritize: (1) communications with federal agencies and state and local government entities; (2) documents relating to any threat assessments, information reports, intelligence assessments, after-action reports, response timelines, or operational summaries; (3) documents relating to any requests or offers for security assistance or other mitigation measures; (4) documents regarding participation in the events of January 6, 2021, by any EOP or OVP employee or official, as well as any disciplinary measures

The Honorable Ronald A. Klain
The Honorable David S. Ferriero
Page 2

considered or taken; and (5) communications, if any, with participants in the events of January 6, 2021, or other individuals associated with groups participating in the events of January 6, 2021.

The Committee on Oversight and Reform is the principal oversight committee of the House of Representatives and has broad authority to investigate "any matter" at "any time" under House Rule X.  An attachment to this letter provides additional instructions for responding to the Committees' request.  Please contact Committee staff at (202) 225-5051 if you have any questions about this request.

Sincerely,

Carolyn B. Maloney
Chairwoman
Committee on Oversight and Reform

Adam B. Schiff
Chairman
House Permanent Select Committee
 on Intelligence

Bennie G. Thompson
Chairman
Committee on Homeland Security

Jerrold Nadler
Chairman
Committee on the Judiciary

Zoe Lofgren
Chairperson
Committee on House Administration

Adam Smith
Chairman
Committee on Armed Services

Enclosure

cc:     The Honorable James R. Comer, Ranking Member
        Committee on Oversight and Reform

        The Honorable Devin Nunes, Ranking Member
        House Permanent Select Committee on Intelligence

The Honorable Ronald A. Klain
The Honorable David S. Ferriero
Page 3

The Honorable John Katko, Ranking Member
Committee on Homeland Security

The Honorable Jim Jordan, Ranking Member
Committee on the Judiciary

The Honorable Rodney Davis, Ranking Member
Committee on House Administration

The Honorable Mike Rogers, Ranking Member
Committee on Armed Services

# ATTACHMENT B



**BENNIE G. THOMPSON, MISSISSIPPI**
CHAIRMAN

ZOE LOFGREN, CALIFORNIA
ADAM B. SCHIFF, CALIFORNIA
PETE AGUILAR, CALIFORNIA
STEPHANIE N. MURPHY, FLORIDA
JAMIE RASKIN, MARYLAND
ELAINE G. LURIA, VIRGINIA
LIZ CHENEY, WYOMING
ADAM KINZINGER, ILLINOIS

U.S. House of Representatives
Washington, DC 20515

january6th.house.gov
(202) 225-7800

**One Hundred Seventeenth Congress**

**Select Committee to Investigate the January 6th Attack on the United States Capitol**

August 25, 2021

The Honorable David S. Ferriero
Archivist of the United States
U.S. National Archives and Records Administration
700 Pennsylvania Avenue, NW
Washington, DC 20408

Dear Mr. Ferriero:

The Select Committee to Investigate the January 6th Attack on the United States Capitol is examining the facts, circumstances, and causes of the January 6th attack. Our Constitution provides for a peaceful transfer of power, and this investigation seeks to evaluate threats to that process, identify lessons learned, and recommend laws, policies, procedures, rules, or regulations necessary to protect our Republic in the future. Pursuant to the Presidential Records Act (44 U.S.C. § 2205(2)(C)), and House Resolution 503, the Select Committee requests that you produce the documents described in the attached schedule from the Executive Office of the President (EOP) and the Office of the Vice President (OVP) in your custody, control, or possession.

Given the urgent nature of our request, we ask that you expedite your consultation and processing times pursuant to your authority under 36 C.F.R. § 1270.44(g). We have some concern about the delay in producing documents requested this past March, and we want to assist your prompt production of materials. We look forward to discussing ways in which we can do that. Toward that end, we request that NARA meet expeditiously with Select Committee investigative staff to discuss production priorities.

This is our first request for materials, and we anticipate additional requests as our investigation continues. Please produce this information to the Select Committee no later than September 9, 2021. An attachment to this letter provides additional instructions for responding to the Select Committee's request.

If you have questions, please contact Select Committee investigative staff at 202-225-7800.

Sincerely,

Bennie G. Thompson
Chairman

The Honorable David Ferriero
Page 2


DOCUMENT SCHEDULE

Pending Requests

The Select Committee reiterates the requests made in the March 25, 2021,[1] correspondence from multiple committees of the House of Representatives, which the Select Committee subsequently joined, for documents and communications received, prepared, or sent between December 1, 2020, and January 20, 2021, relating to the counting of the electoral college vote on January 6, 2021, the potential for demonstrations, violence, or attacks in the National Capital Region on or around January 6, 2021, and the events or aftermath of January 6, 2021.

Those March 25, 2021, requests include but are not limited to:

1.  All documents and communications relating in any way to remarks made by Donald Trump or any other persons on January 6, including Donald Trump's and other speakers' public remarks at the rally on the morning of January 6, and Donald Trump's Twitter messages throughout the day.

2.  All calendars, schedules, and movement logs regarding meetings or events attended by President Trump, including the identity of any individuals in attendance, whether virtual or in-person, on January 6, 2021.

3.  All documents and communications regarding the movements and protection of Vice President Pence on January 6, 2021.

4.  All video communications recorded of the President speaking on January 6, 2021, and all documents and communications related thereto, including communications involving the President or any other officials or employees in the Executive Office of the President or the Office of the Vice President. This request specifically includes videos of communications released to the public and communications recorded but not released to the public, any documents or other communications identifying or discussing the content of those videos.

5.  All photographs, videos, or other media, including any digital time stamps for such media, taken or recorded within the White House on January 6, 2021, or taken of the crowd assembled for the rally on the morning of January 6, and all communications or other documents related to that media.

---

[1] Letter from Chairwoman Carolyn B. Maloney, House Committee on Oversight and Reform, et al., to David Ferriero, Archivist, National Archives (March 25, 2021) (online at https://oversight.house.gov/sites/democrats.oversight.house.gov/files/2021-03-25.House%20Committees%20to%20Agencies%20re%20Jan%206%20Attack.pdf).

The Honorable David Ferriero
Page 3

6. All photographs, videos, or other media, including any digital time stamps for such media, taken or recorded of Vice President Mike Pence or any individuals accompanying him, on January 6, 2021.

7. All documents and communications within the White House on January 6, 2021, relating in any way to the following:

- the January 6, 2021, rally;
- the January 6, 2021, march to the Capitol;
- the January 6, 2021, violence at the Capitol;
- any aspect of the Joint Session where Congress was counting electoral votes;
- any legal, political, or other strategy regarding the counting of electoral votes;
- Donald J. Trump;
- Vice President Pence;
- the President's tweets, speech, any other public communications on that date;
- the President's recording of video for release on that date and any outtakes;
- reactions, summaries, or characterizations of any public speeches or other communications by Donald Trump or other public speakers on that date;
- efforts to persuade the President to deliver any particular message to people at or near the Capitol;
- Sarah Matthews;
- Hope Hicks;
- Mark Meadows;
- Dan Scavino;
- Pat Cipollone;
- Marc Short;
- Patrick Philbin;
- Eric Herschmann;
- Stephan Miller;
- Greg Jacob;
- Matthew Pottinger;
- Keith Kellogg;
- Robert O'Brien;
- Peter Navarro;
- Ben Williamson;
- Cassidy Hutchinson;
- Molly Michael;
- Nicholas "Nick" Luna;
- Judd Deere;
- Kayleigh McEnany;

The Honorable David Ferriero
Page 4

- Ivanka Trump;
- Eric Trump;
- Lara Trump;
- Donald Trump, Jr.;
- Jared Kushner;
- Melania Trump;
- Kimberly Guilfoyle;
- Steve Bannon;
- Michael Flynn;
- Rudolph "Rudy" Giuliani;
- Roger Stone;
- any Member of Congress or congressional staff; or
- the Department of Defense, the Department of Justice, the Department of Homeland Security, the Department of the Interior, or any element of the National Guard.

8. All White House visitor records on January 6, 2021.

9. All documents and communications regarding the movement of the President on January 6, 2021.

10. All call logs and telephone records identifying calls placed to or from any individuals identified in (7) above.

11. All schedules for any individuals identified in (7) above on January 6, 2021, and all documents relating to such meetings, including memoranda, read-aheads, and summaries of such meetings.

12. All documents and communications received, prepared, or sent by any official within the White House Situation Room and the White House Operations Center on January 6, 2021, including but not limited to any communication logs, situation reports, and watch officer notes.

<u>Additional Requests</u>

In addition, to the extent not included in the scope of the March 25, 2021, request, and as a supplement to the requests previously made on March 25, 2021, we hereby make the following additional requests.

### (a) *Planning by the White House and Others for Legal or Other Strategies to Delay, Halt, or Otherwise Impede the Electoral Count*

The Honorable David Ferriero
Page 5

1. From April 1, 2020, through January 20, 2021, all documents and communications related to efforts, plans, or proposals to contest the 2020 Presidential election results.

2. From April 1, 2020, through January 20, 2021, all documents and communications related to plans, efforts, or discussions regarding the electoral count (including plans, efforts, or discussions regarding delaying or impeding the electoral count).

3. All documents and communications concerning the role of the Vice President as the Presiding Officer in the certification of the votes of the electoral college.

4. From November 3, 2020, through January 20, 2021, all documents and communications referring or relating to the 2020 election results between White House officials and officials of State Governments. This includes, but is not limited to, communications with the following individuals and their staff and subordinates:

   - Doug Ducey,
   - Brian Kemp,
   - Brad Raffensperger,
   - Ken Paxton,
   - Frances Watson,
   - Mike Shirkey,
   - Lee Chatfield, or
   - Monica Palmer.

5. From April 1, 2020, through January 20, 2021, all documents and communications related to the 2020 election results, to or from one or more of the following individuals: Rudolph "Rudy" Giuliani, Justin Clark, Matt Morgan, Sidney Powell, Kurt Olsen, or Cleta Mitchell.

6. From April 1, 2020, through January 20, 2021, all documents and communications related to the 2020 Presidential election, including forecasting, polling, or results, and which are authored, presented by, or related in any way to the following individuals: Anthony "Tony" Fabrizio, Brad Parscale, Bill Stepien, Corey Lewandowski, or Jason Miller.

7. All documents and communications to or from David Bossie relating to questioning the validity of the 2020 election results.

8. All documents and communications referring or relating to court decisions, deliberations, or processes involving challenges to the 2020 Presidential election.

The Honorable David Ferriero
Page 6

9.  From November 3, 2020, through January 20, 2021, all documents and communications relating to the State of Texas and litigation concerning the 2020 Presidential election.

10. From November 3, 2020, through December 31, 2020, all documents and communications relating to an amicus brief concerning litigation involving the State of Texas.

11. All documents and communications relating to decisions of the United States Supreme Court issued on December 8, 2020, and December 11, 2020.

12. From November 3, 2020, through January 20, 2021, all documents and communications relating to Justin Riemer and the electoral count or litigation concerning the 2020 Presidential election.

13. All documents and communications referring or relating to QAnon, the Proud Boys, Stop the Steal, Oath Keepers, or Three Percenters concerning the 2020 election results, or the counting of the electoral college vote on January 6, 2021.

14. Any documents and communications relating to election machinery or software used in the 2020 election, including but not limited to communications relating to Dominion Voting Systems Corporation.

15. From November 3, 2020, through January 19, 2021, all documents and communications concerning the resignation of any White House personnel or any politically appointed personnel of any Federal department or agency (including the resignation of any member of the President's Cabinet) and mentioning the 2020 Presidential election or the events of January 6, 2021.

16. All documents and communications concerning prepared remarks for a speech by Donald Trump on November 3, 2020, or November 4, 2020.

17. All documents and communications to or from John Eastman from November 3, 2020, through January 20, 2021.

18. All documents and communications relating to allegations of election fraud or to challenging, overturning, or questioning the validity of the 2020 Presidential election, and involving personnel of the Department of Justice, including any one or more of the following individuals: Jeffrey Rosen, Richard Donoghue, Steven Engel, Jeffrey Wall, Patrick Hovakimian, Byung J. "BJay" Pak, Bobby Christine, or Jeffrey Clark.

19. All documents and communications relating to allegations of election fraud or to challenging, overturning, or questioning the validity of the 2020 Presidential election and Chris Christie.

20. All documents and communications relating to the results of the 2020 Presidential election and Peter Navarro.

21. All documents and communications relating to challenging, overturning, or questioning the validity of the 2020 Presidential election and William Barr.

**(b) Recruitment, Planning, Coordination, and Other Preparations for the Rallies Leading up to and Including January 6th and the Violence on January 6th**

1. All documents and communications relating to planned protests, marches, public assemblies, rallies, or speeches in Washington, DC, on November 14, 2020, December 12, 2020, January 5, 2021, and January 6, 2021.

2. All documents and communications related to security of the Capitol or other Federal facilities on January 5, 2021, and January 6, 2021.

3. All documents and communications concerning Donald Trump's statement on September 29, 2020, for the Proud Boys to "stand back and stand by."

4. From December 1, 2020, through January 20, 2021, any documents and communications involving White House personnel and any Member of Congress, referring or relating to (a) civil unrest, violence, or attacks at the Capitol; (b) challenging, overturning, or questioning the validity of the 2020 election results; (c) the counting of the electoral college vote on January 6, 2021; or (d) appealing the decisions of courts related to the 2020 Presidential election.

5. All documents and communications related to social media information monitored, gathered, reviewed, shared, or analyzed by White House personnel on January 6, 2021.

6. All documents and communications related to any plan for the President to march or walk to the Capitol on January 6, 2021. This request includes any such documents or communications related to a decision not to march or walk to the Capitol on January 6, 2021.

7. From April 1, 2020, through January 20, 2021, all documents and communications concerning the 2020 election and relating to the following individuals:

   ▪ Cindy Chafian,

The Honorable David Ferriero
Page 8

- Greg Locke,
- Robert Patrick Lewis,
- Chris Lippe,
- Tracy Diaz,
- Alex Phillips,
- Bianca Gracia,
- Ali Alexander,
- Brandon Straka,
- Rose Tennet,
- Ed Martin,
- Vernon Jones,
- Cordie Williams,
- Michael Flynn,
- Alex Jones,
- Owen Schroyer,
- Karyn Turk,
- Scott Presler,
- Rogan O'Handley,
- Christie Hutcherson,
- Gina Loudon,
- Jack Posobiec,
- Bryson Grey,
- Angela Stanton King,
- Brian Gibson,
- George Papadopoulos,
- Julio Gonzalez,
- Bernard Kerik,
- Mark Burns,
- Roger Stone,
- George Flynn,
- Tom Van Flein,
- Doug Logan,
- Katrina Pierson,
- Amy Kremer,
- Dustin Stockton,
- Enrique Tarrio,
- Kenneth Harrelson,
- Caroline Wren, or
- Michael Coudrey.

**(c)  *Information Donald Trump Received Following the Election Regarding the Election Outcome, and What He Told the American People About the Election***

The Honorable David Ferriero
Page 9

1. From November 3, 2020, to January 20, 2021, all documents and communications reporting, summarizing, or detailing the voting returns and election results of the 2020 Presidential election.

2. All documents and communications related to Donald Trump's response to the election results of the 2020 Presidential election, including but not limited to any planned public remarks.

3. All documents and communications regarding a November 9, 2020, memorandum from Attorney General William Barr concerning investigation of voter fraud allegations.

4. All documents and communications relating to voting machines or software used in the 2020 election and their control or manipulation through thermostats.

5. From April 1, 2020, through January 20, 2021, all documents and communications relating to challenging the validity of the 2020 election, to, from, or mentioning Mike Lindell.

6. From April 1, 2020, through January 20, 2021, all documents and communications relating to challenging the validity of the 2020 election, to, from, or mentioning Doug Logan.

7. From November 3, 2020, through January 20, 2021, all documents and communications related to prepared public remarks and actual public remarks of Donald Trump.

**(d)  *What the President Knew About the Election's Likely Outcome Before the Election Results and How He Characterized the Validity of the Nation's Election System***

1. From April 1, 2020, through November 3, 2021, all documents and communications provided to Donald Trump or Mark Meadows containing information predicting that Donald Trump would or might lose the 2020 Presidential election.

2. From April 1, 2020, through January 20, 2021, all documents and communications provided to Donald Trump or Mark Meadows relating to mail-in ballots and their effect or predicted effect on results of the election or the timing of election-related news or decisions.

3. From November 3, 2020, through November 5, 2020, all documents and communications provided to Donald Trump or Mark Meadows relating to projected election results of the 2020 Presidential election.

The Honorable David Ferriero
Page 10

4. From April 1, 2020, through January 20, 2021, all documents provided to Donald Trump or Mark Meadows reviewing, assessing, or reporting on the security of election systems in the United States.

5. From April 1, 2020, through January 20, 2021, all documents and communications provided to Donald Trump or Mark Meadows regarding purported election irregularities, election-related fraud, or other election-related malfeasance.

6. From April 1, 2020, through January 20, 2021, all documents and communications provided to Donald Trump or Mark Meadows referring to a stolen election, stealing the election, or a "rigged" election.

**(e) *Responsibilities in the Transfer of Power and the Obligation to Follow the Rule of Law***

1. All documents and communications relating to legal advice or legal analysis of, or compliance with, the constitutional process for certifying the electoral vote. This includes, but is not limited to, communications with and from the following individuals:

   - Pat Cipollone,
   - Patrick Philbin,
   - Eric Herschmann,
   - John Eastman, or
   - Greg Jacobs.

2. All documents and communications on January 6, 2021, related to Mark Milley, Christopher Miller, Kashyap "Kash" Patel, or Ryan McCarthy.

3. From January 6, 2021, through January 20, 2021, all documents and communications related to the events of January 6, 2021, and Mark Milley, Christopher Miller, Kashyap "Kash" Patel, or Ryan McCarthy.

4. From November 3, 2020, through January 20, 2021, all documents and communications concerning the potential or actual changes in personnel at the following departments and agencies:

   - The Department of Defense, within the Office of the Secretary and the Joint Chiefs of Staff. This should include, but is not limited to, such documents and communications concerning the following individuals:

     o Mark Esper,
     o Mark Milley,
     o Christopher Miller,

The Honorable David Ferriero
Page 11

- Kashyap "Kash" Patel,
- James Anderson,
- Anthony Tata,
- Ezra Cohen-Watnick,
- Joseph Kernan, or
- John McEntee

- The Department of Justice. This should include, but is not limited to, such documents and communications concerning the following individuals:

  - Jeffrey Rosen,
  - Richard Donoghue,
  - Jeffrey Clark, or
  - John McEntee

- The Federal Bureau of Investigation. This should include, but is not limited to, such documents and communications concerning the following individuals:

  - Kashyap "Kash" Patel,
  - Christopher Wray, or
  - John McEntee.

- The Central Intelligence Agency. This should include, but is not limited to, such documents and communications concerning the following individuals:

  - Kashyap "Kash" Patel,
  - Gina Haspel,
  - Vaughn Bishop, or
  - John McEntee.

- The Department of Homeland Security (including the United States Secret Service). This should include, but is not limited to, such documents and communications concerning the following individuals:

  - Chad Wolf, or
  - John McEntee.

5. From November 3, 2020, through January 20, 2021, all documents and communications relating to Jeffrey Clark.

6. From November 3, 2020, through January 20, 2021, all documents and communications related to the Twenty-Fifth Amendment to the U.S. Constitution.

The Honorable David Ferriero
Page 12

7. From January 6, 2021, through January 20, 2021, all documents and communications related to the mental stability of Donald Trump or his fitness for office.

8. Any documents and communications relating to instructions to stop or delay preparation for the transition of administrations.

9. All communications between White House personnel and General Services Administration (GSA) Administrator Emily Murphy or other GSA officials relating to "ascertainment" under the Presidential Transition Act. This includes but is not limited to communications discussing the recognition of Joseph Biden as the winner of the 2020 Presidential election.

10. All documents and communications concerning the potential invocation of the Insurrection Act.

11. From November 3, 2020, through January 20, 2021, all documents and communications related to martial law.

12. All documents and communications concerning the use of Federal law enforcement or military personnel during voting in the 2020 Presidential election.

13. From November 3, 2020, through January 20, 2021, all documents and communications related to Kashyap "Kash" Patel.

14. From November 3, 2020, through January 20, 2021, all documents and communications related to John McEntee.

*(f)* *Other Materials Relevant to the Challenges to a Peaceful Transfer of Power*

1. Any documents and communications relating to foreign influence in the United States 2020 Presidential election through social media narratives and disinformation.

2. All documents and communications related to the January 3, 2021, letter from 10 former Defense Secretaries warning of use of the military in election disputes.

**Responding to the Select Committee to Investigate the January 6th Attack on the United States Capitol's Document Requests**

1. In complying with this request, produce all responsive documents, regardless of classification level, that are in your possession, custody, or control, whether held by you or your past or present agents, employees, and representatives acting on your behalf. Produce all documents that you have a legal right to obtain, that you have a right to copy, or to which you have access, as well as documents that you have placed in the temporary possession, custody, or control of any third party.

2. Requested documents, and all documents reasonably related to the requested documents, should not be destroyed, altered, removed, transferred, or otherwise made inaccessible to the Select Committee to Investigate the January 6th Attack on the United States Capitol ("Committee').

3. In the event that any entity, organization, or individual denoted in this request is or has been known by any name other than that herein denoted, the request shall be read also to include that alternative identification.

4. The Committee's preference is to receive documents in a protected electronic form (i.e., password protected CD, memory stick, thumb drive, or secure file transfer) in lieu of paper productions.  With specific reference to classified material, you will coordinate with the Committee's Security Officer to arrange for the appropriate transfer of such information to the Committee.  This includes but is not necessarily limited to: a) identifying the classification level of the responsive document(s); and b) coordinating for the appropriate transfer of any classified responsive document(s).

5. Electronic document productions should be prepared according to the following standards:

   a. If the production is completed through a series of multiple partial productions, field names and file order in all load files should match.

   b. All electronic documents produced to the Committee should include the following fields of metadata specific to each document, and no modifications should be made to the original metadata:

      BEGDOC, ENDDOC, TEXT, BEGATTACH, ENDATTACH, PAGECOUNT, CUSTODIAN, RECORDTYPE, DATE, TIME, SENTDATE, SENTTIME, BEGINDATE, BEGINTIME, ENDDATE, ENDTIME, AUTHOR, FROM, CC, TO, BCC, SUBJECT, TITLE, FILENAME, FILEEXT, FILESIZE, DATECREATED, TIMECREATED, DATELASTMOD, TIMELASTMOD, INTMSGID, INTMSGHEADER, NATIVELINK, INTFILPATH, EXCEPTION, BEGATTACH.

1

6.     Documents produced to the Committee should include an index describing the contents of the production. To the extent more than one CD, hard drive, memory stick, thumb drive, zip file, box, or folder is produced, each should contain an index describing its contents.

7.     Documents produced in response to this request shall be produced together with copies of file labels, dividers, or identifying markers with which they were associated when the request was served.

8.     When you produce documents, you should identify the paragraph(s) or request(s) in the Committee's letter to which the documents respond.

9.     The fact that any other person or entity also possesses non-identical or identical copies of the same documents shall not be a basis to withhold any information.

10.    The pendency of or potential for litigation shall not be a basis to withhold any information.

11.    In accordance with 5 U.S.C.§ 552(d), the Freedom of Information Act (FOIA) and any statutory exemptions to FOIA shall not be a basis for withholding any information.

12.    Pursuant to 5 U.S.C. § 552a(b)(9), the Privacy Act shall not be a basis for withholding information.

13.    If compliance with the request cannot be made in full by the specified return date, compliance shall be made to the extent possible by that date. An explanation of why full compliance is not possible shall be provided along with any partial production, as well as a date certain as to when full production will be satisfied.

14.    In the event that a document is withheld on any basis, provide a log containing the following information concerning any such document: (a) the reason it is being withheld, including, if applicable, the privilege asserted; (b) the type of document; (c) the general subject matter; (d) the date, author, addressee, and any other recipient(s); (e) the relationship of the author and addressee to each other; and (f) the basis for the withholding.

15.    If any document responsive to this request was, but no longer is, in your possession, custody, or control, identify the document (by date, author, subject, and recipients), and explain the circumstances under which the document ceased to be in your possession, custody, or control.  Additionally, identify where the responsive document can now be found including name, location, and contact information of the entity or entities now in possession of the responsive document(s).

2

16.     If a date or other descriptive detail set forth in this request referring to a document is inaccurate, but the actual date or other descriptive detail is known to you or is otherwise apparent from the context of the request, produce all documents that would be responsive as if the date or other descriptive detail were correct.

17.     This request is continuing in nature and applies to any newly-discovered information. Any record, document, compilation of data, or information not produced because it has not been located or discovered by the return date shall be produced immediately upon subsequent location or discovery.

18.     All documents shall be Bates-stamped sequentially and produced sequentially.

19.     Upon completion of the production, submit a written certification, signed by you or your counsel, stating that: (1) a diligent search has been completed of all documents in your possession, custody, or control that reasonably could contain responsive documents; and
(2) all documents located during the search that are responsive have been produced to the Committee.

## Definitions

1.      The term "document" means any written, recorded, or graphic matter of any nature whatsoever, regardless of classification level, how recorded, or how stored/displayed (e.g. on a social media platform) and whether original or copy, including, but not limited to, the following: memoranda, reports, expense reports, books, manuals, instructions, financial reports, data, working papers, records, notes, letters, notices, confirmations, telegrams, receipts, appraisals, pamphlets, magazines, newspapers, prospectuses, communications, electronic mail (email), contracts, cables, notations of any type of conversation, telephone call, meeting or other inter-office or intra-office communication, bulletins, printed matter, computer printouts, computer or mobile device screenshots/screen captures, teletypes, invoices, transcripts, diaries, analyses, returns, summaries, minutes, bills, accounts, estimates, projections, comparisons, messages, correspondence, press releases, circulars, financial statements, reviews, opinions, offers, studies and investigations, questionnaires and surveys, and work sheets (and all drafts, preliminary versions, alterations, modifications, revisions, changes, and amendments of any of the foregoing, as well as any attachments or appendices thereto), and graphic or oral records or representations of any kind (including without limitation, photographs, charts, graphs, microfiche, microfilm, videotape, recordings and motion pictures), and electronic, mechanical, and electric records or representations of any kind (including, without limitation, tapes, cassettes, disks, and recordings) and other written, printed, typed, or other graphic or recorded matter of any kind or nature, however produced or reproduced, and whether preserved in writing, film, tape, disk, videotape, or otherwise. A document bearing any notation not a part of the original text is to be considered a separate document. A draft or non-identical copy is a separate document within the meaning of this term.

2.      The term "communication" means each manner or means of disclosure or exchange of information, regardless of means utilized, whether oral, electronic, by document or otherwise, and whether in a meeting, by telephone, facsimile, mail, releases,  electronic message including email (desktop or mobile device), text message, instant message, MMS or SMS message, message application, through a social media or online platform, or otherwise.

3.      The terms "and" and "or" shall be construed broadly and either conjunctively or disjunctively to bring within the scope of this request any information that might otherwise be construed to be outside its scope. The singular includes plural number, and vice versa. The masculine includes the feminine and neutral genders.

4.      The term "including" shall be construed broadly to mean "including, but not limited to."

5.      The term "Company" means the named legal entity as well as any units, firms, partnerships, associations, corporations, limited liability companies, trusts, subsidiaries, affiliates, divisions, departments, branches, joint ventures, proprietorships, syndicates, or other legal, business or government entities over which the named legal entity exercises control or in which the named entity has any ownership whatsoever.

6.      The term "identify," when used in a question about individuals, means to provide the following information: (a) the individual's complete name and title; (b) the individual's business or personal address and phone number; and (c) any and all known aliases.

7.      The term "related to" or "referring or relating to," with respect to any given subject, means anything that constitutes, contains, embodies, reflects, identifies, states, refers to, deals with, or is pertinent to that subject in any manner whatsoever.

8.      The term "employee" means any past or present agent, borrowed employee, casual employee, consultant, contractor, de facto employee, detailee, assignee, fellow, independent contractor, intern, joint adventurer, loaned employee, officer, part-time employee, permanent employee, provisional employee, special government employee, subcontractor, or any other type of service provider.

9.      The term "individual" means all natural persons and all persons or entities acting on their behalf.

**ATTACHMENT C**



DONALD J. TRUMP
October 8, 2021

The Honorable David S. Ferriero
Archivist of the United States
National Archives and Records Administration
Washington, D.C.

Dear Mr. Ferriero,

I write concerning requests for documents and records sent to your office on March 25, 2021 and August 25, 2021 by the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). The Committee requested an extremely broad set of documents and records, potentially numbering in the millions, which unquestionably contain information protected from disclosure by the executive and other privileges, including but not limited to the presidential communications, deliberative process, and attorney-client privileges.

On August 30, 2021, the National Archives and Records Administration noticed the first set of records for review (P00001 – P00136) (the "First Tranche"). Following a review of such records, pursuant to the Presidential Records Act, 44 U.S.C. § 2208(b), Executive Order 13489, and 36 CFR 1270.44, I have determined that the following records contain information subject to executive privilege, including the presidential communications and deliberative process privileges, and I hereby formally assert executive privilege over these records:

| |
|---|
| P00001 |
| P00002 |
| P00004 |
| P00005 |
| P00006 |
| P00007 – P00009 |
| P00010 |
| P00011 – P00012 |
| P00013 – P00014 |
| P00015 |
| P00016 |
| P00017 |
| P00045 – P00049 |
| P00051 |
| P00053 – P00058 |
| P00060 |
| P00061 |
| P00115 – P00120 |
| P00121 – P00122 |
| P00123 – P00128 |
| P00131 – P00132 |

Further, pursuant to the Presidential Records Act, 44 U.S.C. § 2208(b), Executive Order 13489, and 36 CFR 1270.44, I hereby make a protective assertion of constitutionally based privilege with respect to all additional records following the First Tranche. In cases like this, where Congress has declined to grant sufficient time to conduct a full review, there is a longstanding bipartisan tradition of protective assertions of executive privilege designed to ensure the ability to make a final privilege assertion, if necessary, over some or all of the requested material. See *Protective Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 1 (1996) (opinion of Attorney General Janet Reno). This protective assertion is intended to ensure that I have the ability to make a final assertion of executive privilege, if necessary and appropriate, following a full review of the requested materials. See *Letter for the President from William P. Barr, Attorney General*, at 1-2 (May 8, 2019).

Should the Committee persist in seeking other privileged information, I will take all necessary and appropriate steps to defend the Office of the Presidency.

Sincerely,

cc:    U.S. House Committee on Oversight & Reform
        2157 Rayburn House Office Building
        Washington, DC 20515

        U.S. Senate Committee on Homeland Security & Governmental Affairs
        340 Dirksen Senate Office Building
        Washington, DC, 20510

**ATTACHMENT D**



**THE WHITE HOUSE**
WASHINGTON

October 8, 2021

David Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Ave., N.W.
Washington, D.C., 20408

Dear Mr. Ferriero,

I write in response to your notification of September 8, 2021, regarding a set of documents requested by the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Documents"), and provided to the White House for review pursuant to the Presidential Records Act. After my consultations with the Office of Legal Counsel at the Department of Justice, President Biden has determined that an assertion of executive privilege is not in the best interests of the United States, and therefore is not justified as to any of the Documents.

As President Biden has stated, the insurrection that took place on January 6, and the extraordinary events surrounding it, must be subject to a full accounting to ensure nothing similar ever happens again. Congress has a compelling need in service of its legislative functions to understand the circumstances that led to these horrific events. The available evidence to date establishes a sufficient factual predicate for the Select Committee's investigation: an unprecedented effort to obstruct the peaceful transfer of power, threatening not only the safety of Congress and others present at the Capitol, but also the principles of democracy enshrined in our history and our Constitution. The Documents shed light on events within the White House on and about January 6 and bear on the Select Committee's need to understand the facts underlying the most serious attack on the operations of the Federal Government since the Civil War.

These are unique and extraordinary circumstances. Congress is examining an assault on our Constitution and democratic institutions provoked and fanned by those sworn to protect them, and the conduct under investigation extends far beyond typical deliberations concerning the proper discharge of the President's constitutional responsibilities. The constitutional protections of executive privilege should not be used to shield, from Congress or the public, information that reflects a clear and apparent effort to subvert the Constitution itself.

The President's determination applies solely to the Documents as described herein, which were provided to the White House on September 8, 2021.  We continue to review materials you provided to the White House after that date and will respond at an appropriate time.

We understand that the former President believes that executive privilege should be asserted with respect to a subset of the Documents.  When you notify us of such an assertion, we will respond accordingly.

Sincerely,

Dana A. Remus
*Counsel to the President*

# ATTACHMENT E



THE WHITE HOUSE
WASHINGTON

October 8, 2021

David Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Ave., N.W.
Washington, D.C., 20408

Dear Mr. Ferriero,

I write in response to your communication of October 8, 2021, informing us that former President Trump has asserted executive privilege with regard to a subset of documents requested by the House Select Committee to Investigate the January 6th Attack on the United States Capitol, and requesting President Biden's views. President Biden has considered the former President's assertion, and I have engaged in additional consultations with the Office of Legal Counsel at the Department of Justice. For the same reasons described in my earlier letter, the President maintains his conclusion that an assertion of executive privilege is not in the best interests of the United States, and therefore is not justified as to any of the documents provided to the White House on September 8, 2021. Accordingly, President Biden does not uphold the former President's assertion of privilege.

The President instructs you, in accord with Section 4(b) of Executive Order 13489, to provide the pages identified as privileged by the former President to the Select Committee. In light of the urgency of the Select Committee's need for the information, the President further instructs you to provide those pages 30 days after your notification to the former President, absent any intervening court order.

Sincerely,

Dana A. Remus
*Counsel to the President*

# ATTACHMENT F



Archivist *of the*
United States

NATIONAL
ARCHIVES

October 13, 2021

The Honorable Donald J. Trump

Dear President Trump:

After consultation with the Counsel to the President and the Acting Assistant Attorney General for the Office of Legal Counsel, and as instructed by President Biden, I have determined to disclose to the Select Committee the pages below, which you identified as privileged in your letter of October 8, 2021.  Pursuant to President Biden's subsequent instruction and my authority under 36 C.F.R. 1270.44(g), I will deliver these pages to the Select Committee in 30 days (on November 12, 2021), absent any intervening court order:

- P00001

- P00002

- P00005

- P00006

- P00007-P00009

- P00010

- P00011-P00012

- P00013-P00014

- P00015

- P00016

- P00017

- P00045-P00049

- P00051

- P00053-P00058

DAVID S. FERRIERO  ·  T: 202.357.5900  ·  F: 202.357.5901  ·  *david.ferriero@nara.gov*

National Archives *and* Records Administration  ·  700 Pennsylvania Avenue, NW  ·  Washington, DC 20408  ·  *www.archives.gov*

- P00060

- P00061

- P00121-P00122

- P00123-P00128

- P00131-P00132

Please note that pages P0004 and P00115-P00120 are not responsive to the Select Committee's request, and therefore I will not provide them to the Select Committee. The remaining 90 pages covered by our August 30, 2021 notification are not subject to any assertion of privilege, and therefore I intend to provide them to the Select Committee today.

Sincerely,

DAVID S. FERRIERO
Archivist of the United States

**ATTACHMENT G**



DONALD J. TRUMP

October 21, 2021

The Honorable David S. Ferriero
Archivist of the United States
U.S. National Archives and Records Administration
700 Pennsylvania Avenue, NW
Washington, DC 20408

Mr. Ferriero:

I write concerning requests for documents and records sent to the National Archives and Records Administration ("NARA") on March 25, 2021 and August 25, 2021 by the Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Committee"). The Committee requested an extremely broad set of documents and records, potentially numbering in the millions, which unquestionably contain information protected from disclosure by the executive and other privileges, including but not limited to the presidential communications, deliberative process, and attorney-client privileges.

On September 9, 2021, NARA the noticed the second set of records for review (P000137 – P000878) (the "Second Notification"). Following a review of such records, pursuant to the Presidential Records Act, Executive Order 13489, and 36 CFR 1270.44, I have determined that the following records contain information subject to executive privilege, including the presidential communications and deliberative process privileges, and I hereby formally assert executive privilege over these records:

| P000137 – P000140 |
| P000141 – P000142 |
| P000180 |
| P000181 |
| P000182 – P000191 |
| P000192 – P000198 |
| P000199 – P000201 |
| P000202 – P000204 |
| P000205 – P0000207 |
| P000208 – P000210 |
| P000211 – P000213 |
| P000214 |
| P000215 |
| P000216 |
| P000217 – P000219 |

| |
|---|
| P000220 – P000222 |
| P000223 – P000227 |
| P000228 – P000229 |
| P000230 – P000235 |
| P000253 – P000256 |
| P000257 – P000260 |
| P000261 – P000264 |
| P000265 – P000268 |
| P000269 – P000274 |
| P000275 – P000277 |
| P000278 – P000286 |
| P000287 – P000290 |
| P000291 – P000292 |
| P000293 – P000297 |
| P000298 – P000303 |
| P000304 – P000306 |
| P000307 – P000315 |
| P000316 – P000318 |
| P000319 – P000320 |
| P000321 – P000325 |
| P000326 – P000327 |
| P000328 – P000333 |
| P000334 – P000339 |
| P000342 – P000343 |
| P000344 – P000347 |
| P000348 – P000353 |
| P000354 – P000355 |
| P000356 – P000358 |
| P000359 – P000362 |
| P000363 – P000366 |
| P000367 – P000372 |
| P000373 – P000374 |
| P000375 |
| P000376 – P000377 |
| P000378 – P000381 |
| P000382 – P000387 |
| P000388 – P000391 |
| P000392 – P000395 |
| P000396 – P000397 |
| P000399 – P000405 |
| P000406 – P000407 |

| |
|---|
| P000408 – P000411 |
| P000412 – P000413 |
| P000414 – P000416 |
| P000417 – P000420 |
| P000421 – P000422 |
| P000423 – P000424 |
| P000425 – P000426 |
| P000427 – P000432 |
| P000433 – P000435 |
| P000436 – P000442 |
| P000446 – P000447 |
| P000448 |
| P000449 – P000450 |
| P000451 – P000454 |
| P000455 – P000461 |
| P000462 – P000463 |
| P000464 – P000467 |
| P000468 – P000475 |
| P000476 – P000479 |
| P000480 – P000486 |
| P000487 – P000489 |
| P000490 – P000496 |
| P000497 – P000499 |
| P000500 – P000503 |
| P000504 – P000510 |
| P000511 – P000512 |
| P000513 – P000516 |
| P000517 – P000523 |
| P000524 – P000529 |
| P000530 – P000531 |
| P000532 – P000535 |
| P000536 – P000542 |
| P000543 – P000544 |
| P000545 – P000548 |
| P000549 – P000555 |
| P000556 – P000560 |
| P000561 – P000562 |
| P000563 – P000565 |
| P000566 – P000572 |
| P000573 – P000574 |
| P000575 – P000580 |

| |
|---|
| P000581 – P000583 |
| P000584 – P000586 |
| P000587 – P000588 |
| P000589 – P000591 |
| P000592 – P000595 |
| P000596 – P000598 |
| P000599 – P000600 |
| P000601 |
| P000602 |
| P000603 |
| P000604 – P000605 |
| P000606 – P000611 |
| P000612 |
| P000613 – P000620 |
| P000621 – P000622 |
| P000623 – P000630 |
| P000631 – P000632 |
| P000633 – P000635 |
| P000636 – P000644 |
| P000645 – P000648 |
| P000649 – P000651 |
| P000652 – P000656 |
| P000657 – P000663 |
| P000664 – P000671 |
| P000672 – P000673 |
| P000674 – P000675 |
| P000676 – P000684 |
| P000685 – P000686 |
| P000687 – P000688 |
| P000689 – P000690 |
| P000691 – P000696 |
| P000697 – P000704 |
| P000705 – P000706 |
| P000707 – P000708 |
| P000709 – P000716 |
| P000717 – P000718 |
| P000719 – P000726 |
| P000727 – P000728 |
| P000729 – P000731 |
| P000732 – P000741 |
| P000742 – P000745 |

| P000746 – P000750 |
| P000751 – P000753 |
| P000754 – P000756 |
| P000757 – P000758 |
| P000759 – P000762 |
| P000763 – P000764 |
| P000765 – P000773 |
| P000774 – P000775 |
| P000776 – P000783 |
| P000784 – P000785 |
| P000786 – P000789 |
| P000790 – P000798 |
| P000799 – P000801 |
| P000802 – P000807 |
| P000808 – P000811 |
| P000812 – P000817 |
| P000818 – P000822 |
| P000823 – P000827 |
| P000828 – P000836 |
| P000837 – P000839 |
| P000840 – P000844 |
| P000845 – P000850 |
| P000851 – P000852 |

It is my understanding that NARA has determined that records numbered P000443 – P000445 are not Presidential Records and thus have been removed from the Second Notification and will not be produced to the Committee.

On September 16, 2021, NARA noticed the third set of records for review (P000879 – P001024) (the "Third Notification"). Following a review of such records, pursuant to the Presidential Records Act, Executive Order 13489, and 36 CFR 1270.44, I have determined that the following records contain information subject to executive privilege, including the presidential communications and deliberative process privileges, and I hereby formally assert executive privilege over these records:

| P000891 – P000901 |
| P000902 – P000903 |
| P000904 – P000926 |
| P000927 |
| P000935 – P000950 |
| P000951 – P000955 |
| P000956 – P000959 |

| P000960 – P000962 |
| P000986 – P000988 |

It is my understanding that the Committee has deferred their request for the records identified below.  Although no decision with respect to executive or other privileges needs to be made now, I hereby reserve my right to make a formal assertion of executive or other privileges over these records at the appropriate time.

| P000143 – P000179 |
| P000398 |
| P000879 –P000890 |

Additionally, certain documents included in the Second Notification and/or Third Notification may be subject to additional privileges, including without limitation the attorney-client and work-product privileges. Those records also are subject to executive privilege. To the extent required, any attorney-client or other privilege is not waived and a further review may be required depending on the outcome of the process provided for under the Presidential Records Act, 36 CFR 1270.44, and Executive Order 13489.

*Remainder of Page Intentionally Left Blank*

Finally, to the Presidential Records Act, Executive Order 13489, and 36 CFR 1270.44, I hereby make a protective assertion of constitutionally based privilege with respect to all additional records following the Third Notification. In cases like this, where Congress has declined to grant sufficient time to conduct a full review, there is a longstanding bipartisan tradition of protective assertions of executive privilege designed to ensure the ability to make a final privilege assertion, if necessary, over some or all of the requested material. *See Protective Assertion of Executive Privilege Regarding White House Counsel's Office Documents*, 20 Op. O.L.C. 1 (1996) (opinion of Attorney General Janet Reno). This protective assertion is intended to ensure that I have the ability to make a final assertion of executive privilege, if necessary and appropriate, following a full review of the requested materials. *See Letter for the President from William P. Barr, Attorney General*, at 1-2 (May 8, 2019).

Sincerely,

President Donald J. Trump

**ATTACHMENT H**



**THE WHITE HOUSE**

WASHINGTON

October 25, 2021

David Ferriero
Archivist of the United States
National Archives and Records Administration
700 Pennsylvania Ave., N.W.
Washington, D.C. 20408

Dear Mr. Ferriero,

I write in response to your communication of October 22, 2021, informing us that former President Trump has asserted executive privilege with regard to a subset of documents requested by the House Select Committee to Investigate the January 6th Attack on the United States Capitol (the "Select Committee"), and requesting President Biden's views. President Biden has considered the former President's assertion, and I have engaged in consultations with the Office of Legal Counsel at the Department of Justice. President Biden has determined that an assertion of executive privilege is not in the best interests of the United States, and therefore is not justified, as to the documents provided to the White House on September 16, 2021, and September 23, 2021. Accordingly, President Biden does not uphold the former President's assertion of privilege.

As I wrote in my letter to you on October 8, 2021:

[T]he insurrection that took place on January 6, and the extraordinary events surrounding it, must be subject to a full accounting to ensure nothing similar ever happens again. Congress has a compelling need in service of its legislative functions to understand the circumstances that led to . . . the most serious attack on the operations of the Federal Government since the Civil War. . . . . Constitutional protections of executive privilege should not be used to shield, from Congress or the public, information that reflects a clear and apparent effort to subvert the Constitution itself.

President Biden instructs you, in accord with Section 4(b) of Executive Order 13489, to provide to the Select Committee the pages identified as privileged by the former President. In light of the urgency of the Select Committee's need for the information, President Biden further instructs you to provide those pages 30 days after your notification to the former President, absent any intervening court order.

In the course of an accommodation process between Congress and the Executive Branch, the Select Committee has deferred its request for the following responsive records: Bates Numbers 000143-000179; 000398; 000879-000890. In addition, your staff has informed the White House that a record found at Bates Numbers 000443-000445 is not a presidential record and therefore falls outside the scope of the Select Committee's request. No decision on executive privilege is required for these records.

You should provide to the Select Committee as soon as possible any pages not identified in the preceding paragraph as to which the former President has not asserted privilege. Where appropriate, non-responsive content within responsive records should be redacted.

Sincerely,

Dana A. Remus
*Counsel to the President*

**ATTACHMENT I**



Archivist *of the*
United States

NATIONAL
ARCHIVES

October 27, 2021

The Honorable Donald J. Trump

Dear President Trump:

After consultation with the Counsel to the President and the Acting Assistant Attorney General for the Office of Legal Counsel, and as instructed by President Biden, I have determined to disclose to the House Select Committee to Investigate the January 6th Attack on the United States Capital ("Select Committee") the 724 pages from the Second and Third Notifications that you identified as privileged in your letter of October 21, 2021.  Pursuant to President Biden's subsequent instruction and my authority under 36 C.F.R. 1270.44(g), I will deliver these pages to the Select Committee 30 days from today (November 26, 2021), absent any intervening court order.

As your letter notes, NARA has determined that the pages numbered P000443-P000445 are not Presidential records, and we have therefore withdrawn these pages from the Second Notification.  As your letter further notes, the pages numbered P000143-P000179, P000398, and P000879-P000890 have been deferred from final consideration and thus will not be provided to the Select Committee at this time.  I will provide to the Select Committee in short order the remaining 111 pages that are not subject to an assertion of privilege.

Sincerely,

DAVID S. FERRIERO
Archivist of the United States