IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP, in his capacity as the 45th President of the United States, <br><br> Plaintiff, <br><br> v. <br><br> BENNIE G. THOMPSON, in his official capacity as Chairman of the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol; THE UNITED STATES HOUSE SELECT COMMITTEE TO INVESTIGATE THE JANUARY 6TH ATTACK ON THE UNITED STATES CAPITOL; DAVID S. FERRIERO, in his official capacity as Archivist of the United States; and THE NATIONAL ARCHIVES AND RECORDS ADMINISTRATION, <br><br> Defendants. | Civil Action No. 21-2769 |

**STATEMENT OF POINTS AND AUTHORITIES IN SUPPORT
OF PLAINTIFF'S RENEWED EMERGENCY MOTION FOR INJUNCTION
<u>PENDING APPEAL, OR AN ADMINISTRATIVE INJUNCTION</u>**

# TABLE OF CONTENTS

TABLE OF CONTENTS..................................................................................................i

BACKGROUND ........................................................................................................1

ARGUMENT   ..........................................................................................................2

CONCLUSION   ........................................................................................................8

CERTIFICATE OF SERVICE........................................................................................9

The Plaintiff is seeking this emergency relief to preserve the *status quo* while novel constitutional and statutory issues of first impression underlying this case are considered by the D.C. Circuit Court of Appeals. Therefore, he requests an injunction pending appeal, or, at the very least, an administrative injunction, that will provide the D.C. Circuit sufficient time to consider the appeal on an expedited basis. President Trump's proposal balances the needs of judicial economy and expediency. Absent an injunction pending appeal or an administrative injunction, the National Archives and Records Administration will produce the records in dispute on Friday, November 12, 2021, before appellate review is complete and before President Trump has had the opportunity to be fully and fairly heard.

## BACKGROUND

The background of this case has been thoroughly briefed. DCD Nos. 5-1 and 33. President Trump notified the Archivist of his assertions of executive privilege affecting a small subset of documents. Additionally, he made a protective assertion of executive privilege over any additional materials that may be requested by the Committee. Compl., Exh. 5.

The Biden Administration notified the Archivist it would not assert executive privilege for the documents identified in President Trump's letters and instructed the Archivist to produce the records on November 12, 2021, absent an intervening court order.[1] Compl., Exh. 4. The Archivist notified President Trump that, "[a]fter

---

[1] The Archivist has since confirmed that he intends to produce the documents at 6:00 PM on November 12, absent a court order.

1

consultation with Counsel to the President and the Acting Assistant Attorney General for the Office of Legal Counsel, and as instructed by President Biden" the Archivist has "determined to disclose to the Select Committee" on November 12, 2021, all responsive records former President Trump determined were subject to executive privilege, absent an intervening court order. Compl., Exh. 7.

President Trump acted promptly and filed his complaint on October 18, 2021, DCD No. 1. He filed a Motion for a Preliminary Injunction on the following day, October 19, 2021, DCD No. 5. After full briefing by the parties, the Court heard argument on November 4, 2021. The Court denied the preliminary injunction on November 9, 2021. DCD No. 36. President Trump promptly noted his appeal from that order. DCD No. 37.

## ARGUMENT

A court considers the same four factors when deciding to grant an injunction pending an appeal as when considering a motion for preliminary injunction. *MediNatura, Inc. v. Food & Drug Admin.*, 2021 WL 1025835, at *4 (D.D.C. Mar. 16, 2021) (citing *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). "[A]n injunction pending appeal may be appropriate, even if the Court believed its analysis in denying preliminary relief is correct." *Am. Beverage Ass'n v. City & Cty. of San Francisco*, No. 15-cv-3415, 2016 WL 9184999, at *2 (N.D. Cal. June 7, 2016); *see, e.g., Native Ecosystems Council v. Kimbell*, No. 05-cv-110-M, 2005 WL 8167434, at *1 (D. Mont. Nov. 21, 2005) (granting injunction pending appeal after denying preliminary

injunction because without injunction pending appeal the underlying issue might be mooted without chance for review).

Federal Rule of Civil Procedure 62(d) explicitly allows district courts to grant injunctions pending the appeal of an interlocutory order. An administrative injunction is also appropriate pursuant to the All Writs Act, 28 U.S.C. § 1651, to maintain the *status quo* on a temporary basis while a court considers the matter. *S.E.C. v. Vison Commc'ns, Inc.*, 74 F.3d 287, 291 (D.C. Cir. 1996); *see also United States v. N.Y. Tel. Co.*, 434 U.S. 159, 189 n. 20 (1977) (Stevens, J. dissenting) (citing *FTC v. Dean Foods Co.*, 384 U.S. 597, 604 (1966) (injunction issued under All Writs Act upheld because it was necessary "to preserve the *status quo* while administrative proceedings are in progress and *prevent impairment of the effective exercise of appellate jurisdiction*") (emphasis added).

Earlier this year, in *MediNatura, Inc. v. Food & Drug Administration,* the district court held the "standard for granting an injunction pending appeal is, at least at times, more flexible than a rigid application of the traditional four-part standard applicable to granting a preliminary injunction." *MediNatura,* 2021 WL 1025835, at *6. The court went on to hold "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may favor a plaintiff so decisively that an injunction pending appeal of a difficult or novel legal question may be proper." *Id.* The court explained an injunction pending appeal should be granted if "in the absence of such an injunction, the subject matter of the dispute will be destroyed or otherwise altered in a way that moots the pending appeal." *Id.* at *6. This is exactly the case before this

3

Court. Here, if the documents are released to the Committee, executive privilege will be destroyed, the Archivist may impermissibly release documents, and the *status quo* could not be restored.

President Trump has shown likelihood of success on the merits, but in the alternative, interim relief should be granted under the "serious questions" standard. *See Carey v. Klutznick*, 637 F.2d 834, 839 (2d Cir. 1980); *U.S. Servicemen's Fund v. Eastland*, 488 F.2d 1252, 1256 (D.C. Cir. 1973).

Novel questions of congressional access to presidential records and executive privilege are at the heart of this case. These are serious issues, which the Supreme Court referred to as "fundamental to the 'operation of Government.'" *Trump v. Mazars USA, LLP*, 140 S. Ct. 2019, 2032 (2020) (quoting *United States v. Nixon*, 418 U.S. 683, 708 (1974)). The disagreement between an incumbent President and his successor from a rival political party highlights the importance of executive privilege and the ability of presidents and their advisers to reliably make and receive full and frank advice, without concern that communications will be publicly released to meet a political objective.

This political clash supports the Supreme Court's recognition of former Presidents' right to assert executive privilege. *See Nixon v. GSA,* 433 U.S. 425, 449 (1977). It is why the PRA allows former Presidents to seek a remedy in court. 36 C.F.R. § 1270.44 (stating the Archivist discloses records after incumbent denial of the privilege only if no court order is issued). Thus, the incumbent President's determination is not final.

President Trump has explained in detail, in his briefs and at argument, why he has met the standards of an injunction. DCD Nos. 5-1 and 33. Those arguments are incorporated here by reference. While this Court denied the motion, it acknowledged the novel issues under consideration. DCD No. 35 at 12 ("This case presents the first instance since enactment of the PRA in which a former President asserts executive privilege over records for which the sitting President has refused to assert executive privilege").

The Court's decision should be subject to appellate review before the production is completed in mere days and the issues at hand are mooted. Contrary to the Court's holding, Congress lacks any legislative purpose for the requests at issue, negating the need to even consider whether executive privilege or the Presidential Records Act applies to this dispute. *See Trump v. Mazars,* 140 S. Ct. 2019 (2020). Indeed, in refusing any injunctive relief, even while acknowledging the "wide net" cast by the Committee, DCD No. 35 at 29, the Court has declined to recognize any meaningful limiting principle to Congress's ability to seek presidential records. The Court's novel approach to this question deserves to be tested though our appellate system.

Additionally, in deferring to President Biden in this dispute, the Court recognizes the incumbent as the first, last, and only arbiter of executive privilege disputes involving former presidents. The holding is inconsistent with the Supreme Court's decision in *Nixon v. GSA,* which specifically recognized that the need for confidentiality in communications between a President and his advisers requires that

5

the "privilege survives the individual President's tenure." 433 U.S. 425, 449 (1977). Indeed, the *GSA* case is itself a specific example of the courts adjudicating just such a dispute and allowing an intrusion into the privilege of a former president only when the records at issue would remain confidential. *Id.* at 450–51. Here, there is no such assurance of confidentiality, as President Biden seeks to produce the documents to President Trump's political rivals.

The incumbent is also not suited to resolve the dispute. Quoting James Madison, the Supreme Court has been clear: "No man is allowed to be a judge in his own cause..." *Guitierrez de Martinez v. Lamagno,* 515 U.S. 417, 428 (1995) (*quoting* Federalist No. 10, p. 79). Yet, absent judicial review on a document-by-document basis, this dispute will be determined by a party rather than a neutral. The Court cannot abdicate its roll in resolving this dispute by deferring to the incumbent's unfettered discretion.

Absent an injunction, President Trump will suffer irreparable harm through the effective nullification of important constitutional and statutory rights. Indeed, this case concerns resolution of disputes involving serious disagreements between the former and incumbent president. As he has briefed in detail, Plaintiff's status as a former president under the Presidential Records Act and its regulations entitles him to raise objection and seek judicial intervention in the event of a disagreement between himself and President Biden on matters of executive privilege and the authority of congress to review records created during his tenure. Afterall, presidents have a reliance interest in confidential presidential communications. *See Id* at 449.

6

President Trump is more than an ordinary citizen, as the district court suggests when it states that executive privilege "can neither be claimed nor waived by a private party." DCD No. 35 at 14 (*citing United States v. Reynolds,* 345 U.S. 1, 7 (1953). Instead, he is one of only five living Americans who, as former presidents, are entrusted with protecting the records and communications created during their term of office. *GSA*, the Presidential Records Act, its associated regulations, and Executive Order 13489 are clear: a former president is not merely a "private party." Instead, he has right to be heard and to seek judicial intervention should a disagreement between the incumbent and former presidents arise regarding congressional requests and executive privilege.

Plaintiff personally relied on these rights while in office, the time when the communications and records at issue were created. The attempted destruction of those rights by Defendants is personal to him. Moreover, his rights cannot be fairly evaluated by the incumbent president who lacks context and information concerning the documents in question.

The disclosure of privileged information will constitute irreparable harm because such information, once disclosed, loses its confidential and privileged nature. Such a result would not only injure President Trump but also future presidents by chilling advice given by presidential aides. "Once the documents are surrendered," in other words, "confidentiality will be lost for all time. The *status quo* could never be restored." *Providence Journal Co. v. FBI*, 595 F.2d 889, 890 (1st Cir. 1979); *see also PepsiCo, Inc. v. Redmond*, 1996 WL 3965, at *30 (N.D. Ill. 1996) ("[J]ust as it is

impossible to unring a bell, once disclosed,…confidential information lose their secrecy forever"); *Metro. Life Ins. Co. v. Usery*, 426 F. Supp. 150, 172 (D.D.C. 1976) ("Once disclosed, such information would lose its confidentiality forever."). Accordingly, the most important factor weighs in favor of granting President Trump's injunction. Therefore, President Trump has satisfied his burden. *Chaplaincy of Full Gospel Churches*, 454 F.3d at 297. The invasion of a privilege and the destruction of confidentiality is a pedagogical example of irreparable harm.

## CONCLUSION

Granting interim relief will permit the court to consider the important constitutional and statutory questions with the benefit of fulsome briefing and with the time required to come to thorough, reasoned conclusions. The Court should grant this Motion for an Injunction Pending Appeal, or Administrative Injunction to preserve the *status quo* while these questions are considered on appeal.

Dated: November 10, 2021        Respectfully submitted,

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Counsel for President Donald J. Trump*

8

## CERTIFICATE OF SERVICE

I certify that the foregoing was electronically filed with the Clerk of the Court using the Court's CM/ECF system, which will cause a copy to be sent to all counsel of record.

Dated: November 10, 2021

/s/ Jesse R. Binnall
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, VA 22314
Tel:  (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com
*Counsel for President Donald J. Trump*