**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DONALD J. TRUMP, in his capacity as former President of the United States, <br><br> Plaintiff, <br><br> v. <br><br> BENNIE G. THOMPSON, in his official capacity as Chairman of the Select Committee to Investigate the January 6th Attack on the United States Capitol, United States House of Representatives, *et al.*, <br><br> Defendants. | No. 1:21-cv-2769 (TSC) |

## NARA DEFENDANTS' OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION FOR AN INJUNCTION PENDING APPEAL OR AN ADMINISTRATIVE INJUNCTION

## INTRODUCTION

This Court correctly held that President Biden's considered judgment not to invoke the presidential communications privilege to prevent documents related to Congress' investigation of events that occurred on January 6, 2021, outweighed former President Trump's assertion of privilege. The Court further determined that Congress is engaged in a valid legislative activity within its jurisdiction to conduct, and that Plaintiff's complaints with respect to scope and burden were unfounded. Plaintiff presents no new arguments here, and his second request for an injunction should thus be swiftly denied.

Plaintiff contends that an injunction is warranted now because he will be irreparably harmed if the first tranche of documents is provided to Congress in advance of an appeal. But this Court has already determined that he will not, and he makes no new showing to the contrary, either particularized to these documents, or otherwise. The former President has no personal interest in the records, and the interests he asserts are the same long-term Executive Branch interests that the current President has determined will not be so injured as to warrant withholding these documents from the Select Committee. Further, the public interest weighs heavily in favor of furthering the Government's

business in a prompt and full investigation of the events of January 6. For the same reasons, Plaintiff is not entitled to an administrative injunction, either under the injunction factors or the All Writs Act. Plaintiff has already noticed an appeal, and may seek an injunction pending appeal from the D.C. Circuit. *See* Fed. R. App. P. 8(a)(2).

## ARGUMENT

An injunction pending appeal, like a stay, is an "extraordinary remedy," *Cuomo v. U.S. Nuclear Regul. Comm'n*, 772 F.2d 972, 978 (D.C. Cir. 1985), not issued as "a matter of right." *Nken v. Holder*, 556 U.S. 418, 427 (2009). The moving party must demonstrate that relief is warranted based on consideration of the following factors: (1) whether the applicant has made a strong showing that he is likely to succeed on the merits of the appeal; (2) whether the applicant will be irreparably harmed absent a stay; (3) whether issuance of a stay will substantially injure other parties; and (4) where the public interest lies. *Nken*, 566 U.S. at 433-34. When the government is a party, its "harm and the public interest are one and the same, because the government's interest is the public interest." *Id.* at 435; *Pursuing America's Greatness v. FEC*, 831 F.3d 500, 511 (D.C. Cir. 2016).

In addition, the "sliding scale" approach -- permitting a strong showing on one factor to make up for a weaker showing on another -- may not have survived the Supreme Court's decision in *Winter v. NRDC, Inc., 555 U.S. 7 (2008). Sherley v. Sebelius*, 644 F.3d 388, 392 (D.C. Cir. 2011). Since *Winter*, the D.C. Circuit has at least suggested, without deciding, that "a likelihood of success is an independent, free-standing requirement for a preliminary injunction." *Id.* at 393 (quoting *Davis v. Pension Benefit Guar. Corp.*, 571 F.3d 1288, 1296 (D.C. Cir. 2009) (Kavanaugh, J., concurring)); *see also Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (observing that *Winter* may be "properly read to suggest a 'sliding scale' approach to weighing the four factors be abandoned"). Here, the likelihood of success factor weighs heavily against the entry of an injunction pending appeal, as does each of the other factors.

## I. PLAINTIFF IS STILL UNLIKELY TO SUCCEED ON THE MERITS

Plaintiff insists that the general issue of executive privilege is an important one that alone justifies an injunction. But "[a]n affirmative injunction against a defendant, even on a temporary

basis pending appeal, is an extraordinary remedy, which disrupts the legal status quo in a way that a stay pending appeal does not." *MediNatura, Inc. v. Food & Drug Admin.*, 2021 WL 1025835, at *6 (D.D.C. Mar. 16, 2021).   Before issuing an affirmative injunction pending appeal under Rule 62, therefore, courts generally require "a strong showing that [the movant] is likely to succeed on the merits." *Id*, quoting Wright *et al.*, 11 Fed. Prac. & Proc. Civ. § 2904 (3d ed.).   That is particularly true when the injunction is against the government, which coincides with the public interest.   *Nken*, 566 U.S. at 433-34.

While "serious" issues of executive privilege may be at issue, Pl. Emer. Mot. at 4, the weighing of interests in this particular case did not present a hard case:   The Supreme Court accords greater weight to the views of the incumbent president, *Nixon v. GSA*, 433 U.S. 425, 446 (1977), and President Biden's considered judgment thus far that the Select Committee's need for the information about the events of January 6 overcomes the confidentiality concerns underlying executive privilege, outweighs the former President's contrary view.   *See* Memorandum Opinion ("Mem. Op.") at 17-21.

Contrary to Plaintiff's description, this Court did not determine that the incumbent President is the "first, last, and only arbiter of executive privilege in disputes with former presidents." Pl. Emer. Mot. at 5.   Instead, this Court correctly found, based on Supreme Court precedent, that the former President has a say with respect to claims of presidential communications privilege, but the incumbent President has a greater say. Mem. Op. at 17-21 (citing *Nixon v. GSA*, 433 U.S. at 448).   Plaintiff's view that "[t]he incumbent is also not suited to resolve the dispute," reflects a fundamental misunderstanding of executive privilege.   The incumbent's determination of whether to assert privilege is not about "his own cause," Pl. Emer. Mot. at 6, or about the former President's "cause."   Rather, the privilege exists for the "benefit of the Republic," *Nixon v. GSA*, 433 U.S. at 447, and the incumbent is indisputably in the best position to determine the best interests of the Executive branch, for which the incumbent President alone is responsible.   Mem. Op. at 19 ("Plaintiff is no longer situated to protect executive branch interests with 'the information and attendant duty of executing the laws in the light of current facts and circumstances,'" quoting *Dellums v. Powell*, 561 F.2d 242, 247 (D.C. Cir. 1977)).

Plaintiff's insistence that "he personally relied" on the continued confidentiality of presidential records is both unpersuasive and misguided.  Pl. Emer. Mot. at 7.  Presidential records belong to the United States, not to any individual, and the former President was fully aware that Presidential records that he generated, like those of his predecessors, will largely become public, and that all three branches of government may have access to them to conduct the business of government even during the initial restricted period.  *See* 44 U.S.C. §§ 2202, 2205(2)(C).  Plaintiff's repeated assertions of improper legislative purpose are similarly unavailing. The Court correctly recognized that an abundance of possible legislation concerning the January 6 attack "may be had;" that the breadth of the request will be tempered by the exclusion of any non-Presidential records; and that the incumbent President has to date not found the request either overbroad or burdensome so as to outweigh the congressional need.  Mem. Op. at 31-32.

In short, Plaintiff posits no argument here that the Court has not already correctly rejected. He is therefore unlikely to succeed on the merits of his appeal, a factor that weighs heavily against an injunction pending appeal.

## II.   PLAINTIFF STILL HAS NOT MADE A SHOWING OF IRREPARABLE HARM THAT OUTWEIGHS THE PUBLIC INTEREST, AS FOUND BY THE SITTING PRESIDENT, IN COMPLYING WITH THE SELECT COMMITTEE'S REQUEST.

Plaintiff's motion for an injunction pending appeal must also be denied because he still has not made a showing of irreparable harm that would overcome the judgment of the sitting President that Plaintiff's asserted fears of injury to the effective functioning of the Executive Branch are outweighed by the paramount public interest in "'the American people's ability to reconstruct and come to terms' with" the events of January 6.  Mem. Op. at 38 (quoting *Nixon v. GSA*, 433 U.S. at 452-53).

To show the irreparable harm required to obtain an extraordinary injunction pending appeal, a plaintiff must "demonstrate injury that is 'both certain and great, actual and not theoretical, beyond remediation, and of such imminence that there is a clear and present need for equitable relief to prevent irreparable harm.'"  *Soundboard Ass'n v. FTC*, 254 F. Supp. 3d 7, 13 (D.D.C. 2017) (quoting

4

*Mexichem Specialty Resins, Inc. v. EPA*, 787 F.3d 544, 555 (D.C. Cir. 2015)); *see also Schindler Elevator Corp v. WMATA*, 2021 WL 663191, at *2 (D.D.C. Feb. 19, 2021).  Plaintiff previously failed to make any such showing that would warrant injunctive relief under these circumstances, *see* Mem. Op. at 36-39, and he has not done so, either, in support of his request for an injunction pending appeal.

 As before, Plaintiff makes no attempt to show that he personally will suffer irreparable harm if injunctive relief is denied.  *See* Mem. Op. at 36.  Rather, he argues that without an injunction pending appeal NARA "will produce records before . . . appellate review is complete," and the resulting loss of confidentiality will "chill[ ] advice" given to future Presidents by their aides.  Pl. Emer. Mot. at 1, 6-7.  But Plaintiff's predictions that the disclosures contemplated here  "will gravely undermine the functioning of the executive branch" are "refuted by the incumbent President's directions to the Archivist to produce the request records, and by the actions of past Presidents who similarly decided to waive executive privilege when dealing with matters of grave public importance[.]"  Mem. Op. at 37.

 Indeed, it is of critical importance to the analysis of irreparable harm, and the balance of interests, that records responsive to the Select Committee's request (which will vary in nature and sensitivity) will be released only with the concurrence of the incumbent President, based on his judgment that the compelling public interest in making them available to the Select Committee outweighs any incidental impact their release might have on Executive Branch confidentiality interests.  *See* NARA Defs.' PI Opp. at 40-41.  As the Court observed, the sitting President is the person "in the best position to assess the past and future needs of the Executive Branch."  Mem. Op. at 18 (quoting *Nixon v. GSA*, 433 U.S. at 449).  Moreover, both "the legislative and executive branches agree that the nation's interest is best served by [the] disclosure[s]" at issue.  *Id.* at 20.  Plaintiff has made no showing that furnishing responsive records to the Select Committee under these circumstances will immediately result in such certain, great, actual, and irremediable harm to Executive Branch interests, *see Soundboard*, 254 F. Supp. 3d at 13, as to justify a court second-guessing the judgment reached by the incumbent President, together with the Legislative Branch, *see* Mem. Op. at 38, that producing responsive records to the Select Committee will serve the greater national interest.  Plaintiff has not made that showing with respect to the particular records included in NARA's first three notifications.

Nor has he made such a showing with respect to any further releases the President might authorize that would justify anticipatory relief at this time.  If during the pendency of a (no doubt) expedited appeal the President authorizes a disclosure of particular documents that Plaintiff believes would result in such certain, great, immediate, and irreparable harm to the Executive Branch's interests as to "present a clear and present need for equitable relief," *Soundboard Ass'n*, 254 F. Supp. 3d at 13, then he can move for appropriately tailored injunctive relief as any such need arises.

Plaintiff suggests in passing that an injunction pending appeal is necessary to prevent the case from becoming moot before the Court of Appeals has an opportunity to issue a ruling on the merits of his claims.  *See* Pl. Emer. Mot. at 2-3, 5 (citing, *inter alia*, *MediNatura v. FDA*, 2021 WL 1025835, at *6-7 (D.D.C. Mar. 16, 2021) and *Native Ecosystems Council v. Kimbell*, 2005 WL 8167434, at *1 (D. Mont. Nov. 21, 2005)).  That contention is without merit.  Currently at issue are just 763 pages of assertedly privileged documents included in NARA's first three notifications.  Laster Decl. ¶¶ 17, 24.  Yet, as the record reflects, NARA has many thousands of additional records to review for responsiveness to the Select Committee's request. *Id.* ¶ 15.  Undoubtedly NARA will have to issue numerous additional notifications of intent to disclose responsive documents, *see id.* ¶ 9, as to each of which Plaintiff and the President will have to make determinations of privilege, *see generally* NARA Defs.' PI Opp. at 6-7; Laster Decl. ¶¶ 6, 8.  There is no reason to believe this process will be completed as to all responsive records before an expedited appeal can be heard.  Moreover, as the process continues to unfold while the case is on appeal, if the President authorizes releases of particular records that in Plaintiff's view will result in certain and immediate irreparable harm to the interests he purports to be defending, then, as noted, he can move at that time for appropriate injunctive relief.  Any contention that the failure to grant immediate relief will moot Plaintiff's appeal, however, is baseless.

## III.   PLAINTIFF IS NOT ENTITLED TO AN ADMINISTRATIVE STAY UNDER THE ALL WRITS ACT.

Finally, in the event the Court denies Plaintiff's request for an injunction pending appeal (as it should), Plaintiff requests in the alternative that the Court enter an "administrative injunction,"

pursuant to the All Writs Act, 28 U.S.C. § 1651, to maintain the status quo while he seeks an injunction pending appeal from the D.C. Circuit.  Pl. Emer. Mot. at 3-4.  This request should also be denied.

The All Writs Act provides that federal courts "may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law."  28 U.S.C. § 1651(a).  The Act, however, furnishes no basis for the administrative relief that Plaintiff seeks.

First, the All Writs Act, by its terms "confines [its] authority to the issuance of writs in aid of the issuing court's jurisdiction."  *In re Murray Energy Corp.*, 788 F.3d 330, 335 (D.C. Cir. 2015) (quotation omitted); *see also In re Mohammad*, 866 F.3d 473, 475 (D.C. Cir. 2017); *Jarkesy v. SEC*, 803 F.3d 9, 30 (D.C. Cir. 2015).  As discussed above, no immediate relief is needed to preserve this Court's jurisdiction to hear Plaintiff's claims, or for that matter the Court of Appeals' jurisdiction, because there is no danger that Plaintiffs' claims will become moot if relief is withheld.  Second, "[t]he remedy of mandamus is reserved for extraordinary circumstances in which the petitioner demonstrates that his right to issuance of the writ is clear and indisputable[.]"  *NetCoalition*, 715 F.3d at 354.  As this Court has already held, Plaintiff has not shown even a likelihood of success on the merits of his claims, much less the clear and indisputable entitlement to relief required for mandamus.  Mandamus relief under section 1651 is therefore unavailable.

## CONCLUSION

The NARA Defendants respectfully request that the Motion for Emergency Injunction Pending Appeal, or an Administrative Injunction, be denied.


Dated:  November 10, 2021

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

BRIAN D. NETTER
Deputy Assistant Attorney General

JOHN R. GRIFFITHS
Director

 /s/ Elizabeth J. Shapiro

ELIZABETH J. SHAPIRO
JAMES J. GILLIGAN
Attorneys

U.S. Department of Justice
Civil Division, Federal Programs Branch
P.O. Box 883
Washington, D.C.  20044
Telephone:  (202) 514-5302
Fax:          (202) 616-8470
E-mail:       elizabeth.shapiro@usdoj.gov

*Counsel for NARA Defendants*