# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| DONALD J. TRUMP,<br><br>　　　　　　　　*Plaintiff*,<br><br>　　v.<br><br>BENNIE G. THOMPSON, *et al.*,<br><br>　　　　　　　　*Defendants*. | Case No. 1:21-cv-02769 (TSC) |

**CONGRESSIONAL DEFENDANTS' OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR AN INJUNCTION PENDING APPEAL OR AN ADMINISTRATIVE INJUNCTION**

**TABLE OF CONTENTS**

INTRODUCTION ................................................................................................................................ 1

ARGUMENT ....................................................................................................................................... 2

I.   The "Serious Legal Question" Standard Proposed by Mr. Trump Is Incorrect ........................ 2

II.  Mr. Trump Is Unlikely to Succeed on the Merits of His Claims ............................................. 5

III. Mr. Trump Has Not Shown That He Will Be Irreparably Harmed by NARA's Compliance
     with the Select Committee's Request ..................................................................................... 6

IV.  An Injunction Pending Appeal Would Substantially Injure the Select Committee and
     Disserve the Public Interest .................................................................................................... 7

IV.  Mr. Trump Is Not Entitled to an Administrative Injunction .................................................... 8

CONCLUSION .................................................................................................................................... 9

CERTIFICATE OF SERVICE

**INTRODUCTION**

Mr. Trump is not entitled to the "exceptional remedy" of an injunction pending appeal. *John Doe Co. v. Consumer Fin. Prot. Bureau*, 849 F.3d 1129, 1131 (D.C. Cir. 2017). The House of Representatives Select Committee to Investigate the January 6th Attack on the United States Capitol ("Select Committee") urgently needs access to the documents requested from the National Archives and Records Administration ("NARA") to investigate an unprecedented attack on Congress itself, and timely develop proposals for remedial legislation and other measures, so that Congress can act quickly to pass legislation designed to prevent attacks like the one on January 6 from recurring.

Mr. Trump has not satisfied the "stringent requirements" for an injunction pending appeal. *Archdiocese of Washington v. Washington Metro. Area Transit Auth.*, 877 F.3d 1066 (D.C. Cir. 2017). Indeed, this Court has already correctly determined that Mr. Trump has failed to establish that he is entitled to an injunction. Mr. Trump provides no valid reason for the Court to revisit that conclusion. Although Mr. Trump urges this Court to apply a lower standard than it applied to his preliminary injunction motion, the D.C. Circuit has not endorsed such an approach, and the case law he cites does not support his contention that an injunction is warranted here.

Regardless of the appropriate standard, the preliminary-injunction factors weigh heavily against an injunction pending appeal. As explained in the Congressional Defendants' opposition to Mr. Trump's motion for a preliminary injunction, and as this Court has correctly recognized, Mr. Trump is unlikely to succeed on the merits of his claims. The requested materials are vital to the Select Committee's investigation into the causes and influencing factors that led to the January 6 attack and the breach of the peaceful transfer of power. Critically, the only cognizable harm that Mr. Trump can assert is harm to the Executive Branch's interests, but the incumbent President—who is in the best position to evaluate those interests—has already determined that

any such harm is outweighed by the surpassing public interest. On the other side of the ledger, withholding the requested documents would harm the Select Committee and the public by depriving the Select Committee of information essential to its ongoing investigation and ability to propose remedial legislation. The potential harm to the public is immense: Our democratic institutions and a core feature of our democracy—the peaceful transfer of power—are at stake. Any delay will seriously hinder the Select Committee's ability to timely complete a comprehensive investigation and recommend effective remedial legislation. The Congressional Defendants respectfully request that the Court deny Mr. Trump's motion for an injunction pending appeal or an administrative injunction.

## ARGUMENT

A preliminary injunction is "an extraordinary remedy that may only be awarded upon a clear showing that the [movant] is entitled to such relief." *John Doe Co.*, 849 F.3d at 1131. "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Id*. Because Mr. Trump seeks the "exceptional remedy of an injunction pending appeal," he will "face[] the difficult task of coming forward with evidence and argument showing that it is likely that the district court abused its discretion in denying a preliminary injunction." *Id*. (internal quotation marks omitted). The preliminary-injunction factors weigh strongly in the Congressional Defendants' favor.

### I.     The "Serious Legal Question" Standard Proposed by Mr. Trump Is Incorrect

As a preliminary matter, Mr. Trump is incorrect that the Court should apply a "more flexible" standard now that he is seeking an injunction pending appeal. Pl.'s Statement of Pts. & Auth. ISO Renewed Mot. for Inj. Pending Appeal ("Mem.") at 3 (internal quotation marks

omitted). The D.C. Circuit has never suggested that a less demanding standard applies when a movant seeks an injunction pending appeal. To the contrary, the D.C. Circuit has called an injunction pending appeal an "exceptional remedy," *John Doe Co.*, 849 F.3d at 1131, and has made clear that the movant must satisfy the same "stringent requirements" that apply to a preliminary injunction, *Archdiocese of Washington*, 877 F.3d at 1066.

Indeed, the D.C. Circuit has suggested, following the Supreme Court's decision in *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008), that proving a likelihood of success on the merits is an independent, free-standing requirement, and that it is not enough to show a "serious legal question," even where the other factors strongly favor issuing an injunction, *see Citizens for Resp. & Ethics in Washington v. FEC*, 904 F.3d 1014, 1019 (D.C. Cir. 2018) (noting appellant's failure to show a likelihood of success on the merits was an "arguably fatal flaw" for a stay application pending appeal, and citing *Aamer v. Obama*, 742 F.3d 1023, 1043 (D.C. Cir. 2014), which declined to decide whether "a plaintiff need only raise a serious legal question" if "the other three factors strongly favor issuing an injunction"); *Sherley v. Sebelius*, 644 F.3d 388, 393 (D.C. Cir. 2011) ("[W]e read *Winter* at least to suggest if not to hold 'that a likelihood of success is an independent, free-standing requirement for a preliminary injunction[.]'"). This Court has already held that Mr. Trump has not shown a likelihood of success on the merits, and thus he cannot satisfy the requirements for an injunction pending appeal.

The primary case on which Mr. Trump relies—*MediNatura, Inc. v. Food & Drug Admin.*, No. 20-2066, 2021 WL 1025835 (D.D.C. Mar. 16, 2021)—does not support his position. There, the movant pressed the district court to adopt the "serious legal question" standard, but the court explained that "[n]othing in the logic" of the case law or the "the text of" Federal Rule of Civil Procedure 62(d), "dictates that the Court must adopt the 'serious legal question' test." *Id.* at *6.

3

Instead, the district court held only that "in rare cases, the threat of irreparable harm may be so grave and the balance of equities may favor a plaintiff so decisively that an injunction pending appeal of a difficult or novel legal question may be proper." *Id.* In the court's view, other courts in this district "have relied on the 'serious legal question' standard for likelihood of success on the merits 'only when the other three factors tip sharply in the movant's favor.'" *Id.* (quoting *In re Special Proceedings*, 840 F. Supp. 2d 370, 372 (D.D.C. 2012)).

Accordingly, even if a less demanding standard for an injunction pending appeal is ever appropriate (and D.C. Circuit precedent suggests it is not, *see supra* p. 3), under the reasoning of *MediNatura* such a standard is not warranted here. As explained below, Mr. Trump has failed to show irreparable harm, let alone "grave" irreparable harm, and the other three factors "tip sharply" in the Congressional Defendants' favor. 2021 WL 1025835 at *6-7. If anything, a *more* demanding standard for an injunction is warranted here, given that the injunction sought would be issued against government defendants, and that (contrary to Mr. Trump's characterization) the *status quo* is that one branch of government intends to provide documents to another branch as required by statute and pursuant to this Court's ruling. *See I.N.S. v. Legalization Assistance Project of Los Angeles Cnty. Fed'n of Lab.*, 510 U.S. 1301, 1306 (1993) (O'Connor, J., in chambers) (granting a stay of lower court injunction against Executive Branch because "the order is not merely an erroneous adjudication of a lawsuit between private litigants, but an improper intrusion by a federal court into the workings of a coordinate branch of the Government"); *Sampson v. Murray*, 415 U.S. 61, 83-84 (1974) (holding, in light of intrusion on Executive Branch, "that the Court of Appeals was quite wrong in routinely applying to this case the traditional standards governing more orthodox 'stays'").

## II.     Mr. Trump Is Unlikely to Succeed on the Merits of His Claims

For the reasons stated in this Court's opinion—as well as the Congressional Defendants' and the NARA Defendants' oppositions to Mr. Trump's motion for a preliminary injunction—Mr. Trump is unlikely to succeed on the merits of his claim.  *See* Congressional Defs.' Mem. in Opp. to Prelim. Inj. 18-38; NARA Defs.' Mem. in Opp. to Prelim. Inj. 13-38.  As this Court held, the Select Committee has a valid legislative purpose for its request for the documents at issue; executive privilege does not shield the records from disclosure because "the incumbent President—not a former President—is best positioned to evaluate the long-term interests of the executive branch and to balance the benefits of disclosure against any effect on the … ability of future executive branch advisors to provide full and frank advice"; the various additional balancing tests Mr. Trump cites do not apply in this case because they were designed to address the unique separation-of-powers questions that arise when the papers of a sitting—as opposed to a former—President are at issue; and, in any event, the *Mazars* test is satisfied.  *See* Op. 13-36.  This Court correctly concluded that the Select Committee is entitled to the requested documents, and Mr. Trump has provided no reason that the D.C. Circuit is likely to disagree with this Court's judgment.

Moreover, Mr. Trump's request fails to satisfy even the "serious legal question" standard that he proposes.  Although the precise question at issue is new—and the stakes of this case are undoubtedly high—the ultimate legal question is not a difficult one.  This Court's conclusion is correct.  Courts, especially in this district, are well versed in considering and deciding questions of privilege. And, in *Nixon v. GSA*, 433 U.S. 425 (1977), the Supreme Court gave clear guidance about how to weigh a privilege claim when the individual asserting privilege is a former President.  This Court has correctly applied that precedent.

### III. Mr. Trump Has Not Shown That He Will Be Irreparably Harmed by NARA's Compliance with the Select Committee's Request

This Court correctly concluded that Mr. Trump has "fail[ed] to show that any irreparable injury is likely to occur" if NARA provides the requested documents to the Select Committee. Op. 36. For the reasons stated in this Court's opinion—as well as the Congressional Defendants' and the NARA Defendants' oppositions to Mr. Trump's motion for a preliminary injunction—Mr. Trump has not established irreparable harm. *See* Congressional Defs.' Mem. in Opp. to Prelim. Inj. 38-39; NARA Defs.' Mem. in Opp. to Prelim. Inj. 39-41.

Mr. Trump argues that he "personally relied on" the assumption that the executive privilege would shield disclosure of the records in question, and thus "[t]he attempted destruction of those rights by Defendants is personal to him." Mem. 7. "That privilege, however, is not for the benefit of any 'individual, but for the benefit of the Republic.'" Op. 37 (quoting *Nixon v. GSA*, 433 U.S. at 449). Similarly, the documents at issue belong to the United States pursuant to the Presidential Records Act, not to Mr. Trump personally. 44 U.S.C. § 2202.

Further, Mr. Trump's assertion of harm to the *Executive Branch* arising from the disclosure of potentially privileged documents fails for the same reason Mr. Trump's privilege claims fail on the merits. As between the incumbent President and the former President, the incumbent President is in by far the best position to evaluate and weigh the harm to the Executive Branch—including any potential chilling effect on future Presidents—and President Biden has determined that any harm here is outweighed by the Select Committee's pressing need for the documents. *See GSA*, 433 U.S. at 449. Mr. Trump contends without any support that President Biden "is [] not suited to resolve the dispute," Mem. 6, and that instead this Court should decide for itself what the interests of the Executive Branch are here. This contention does not fit with the established law: As this Court recognized, it "is not best situated to determine

6

...
...

executive branch interests," Op. 20; rather, "it must be presumed that the incumbent President is vitally concerned with and in the best position to assess the present and future needs of the Executive Branch." *Nixon v. GSA*, 433 U.S. at 449.

Mr. Trump argues that the privilege will be "destroyed" and "could not be restored" if the documents are produced, Mem. 4, but such an argument alone does not establish harm that would entitle Mr. Trump to an injunction pending appeal. As this Court explained, the privilege is for the "benefit of the Republic" and the notion that disclosure will "undermine the functioning of the executive branch is refuted by the incumbent President's direction to the Archivist to produce the requested records, and by the actions of past Presidents who similarly decided to waive executive privilege when dealing with matters of grave public importance." Op. 37 (internal quotation marks omitted). This Court correctly concluded that Mr. Trump "has made no showing of imminent irreparable harm to any interests protected by executive privilege that compels an immediate halt to compliance with the Select Committee's requests," *id.*, and Mr. Trump has provided no reason for this Court to reconsider that conclusion.

### IV. An Injunction Pending Appeal Would Substantially Injure the Select Committee and Disserve the Public Interest

An injunction pending appeal would substantially and irreparably harm the Select Committee by depriving it of information needed to carry out its investigation. More importantly, an injunction would undeniably harm the public's interest in preventing a future attack on this Nation's democracy. As this Court recognized, "the January 6 attack is a matter of unsurpassed public importance because such information relates to our core democratic institutions and the public's confidence in them." Op. 38. If the Select Committee cannot promptly receive the requested documents, it could run out of time to adequately investigate the attack and thoroughly understand its influencing factors. Congress would thus be less informed

and less able to develop and propose effective remedial legislation and other measures necessary to prevent the erosion of our democratic institutions for their timely enactment by Congress. In light of the stakes of this case—and the fact that the threat to our democracy is ongoing—the injury to the Select Committee and the public as a whole would be irreparable and could well be severe. This Court thus correctly refused to give "short shrift" to the consequences of delaying the Select Committee's investigation. Op. 39. For these reasons and the reasons stated in the Congressional Defendants' and the NARA Defendants' oppositions to Mr. Trump's motion for a preliminary injunction, the balance of the equities and the public interest tilt decisively against an injunction pending appeal. Congressional Defs.' Mem. in Opp. to Prelim. Inj. 40-43; NARA Defs.' Mem. in Opp. to Prelim. Inj. 41-42.

## V.     Mr. Trump Is Not Entitled to an Administrative Injunction

Like the NARA Defendants, the Congressional Defendants opposes a grant of an administrative injunction by this Court. This Court has analyzed the issues and determined that delay of disclosure will cause harm to the Select Committee and the public. This Court correctly ruled that the Executive Branch will not be irreparably injured by the disclosures here—based on the current President's direction to produce the requested records—and there is no reason for this Court to reassess its determination at this point.

## CONCLUSION

The Congressional Defendants respectfully request that the Court deny Mr. Trump's motion for an injunction pending appeal or an administrative injunction.

Respectfully submitted,

| | |
|---|---|
| Annie L. Owens | Douglas N. Letter |
| Mary B. McCord |   *General Counsel* |
| Joseph W. Mead | Todd B. Tatelman |
| INSTITUTE FOR CONSTITUTIONAL |   *Principal Deputy General Counsel* |
| ADVOCACY AND PROTECTION | Eric R. Columbus |
| Georgetown University Law Center |   *Special Litigation Counsel* |
| 600 New Jersey Avenue NW | Stacie M. Fahsel |
| Washington, D.C. 20001 |   *Associate General Counsel* |
| Telephone: (202) 662-9042 | OFFICE OF GENERAL COUNSEL |
| ao700@georgetown.edu | U.S. HOUSE OF REPRESENTATIVES |
| | 5140 O'Neill House Office Building |
| | Washington, D.C. 20515 |
| | Telephone: (202) 225-9700 |
| | Douglas.Letter@mail.house.gov |

*Counsel for Defendants Bennie G. Thompson and the United States House Select Committee to Investigate the January 6th Attack on the United States Capitol*

November 10, 2021

## CERTIFICATE OF SERVICE

I hereby certify that on November 10, 2021, I caused the foregoing document to be filed via the CM/ECF system for the U.S. District Court for the District of Columbia, which I understand caused a copy to be served on all registered parties.

*/s/ Douglas N. Letter*
Douglas N. Letter