**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| v. | : | **Case No. 21-cr-537 (TJK)** |
| | : | |
| **JAMES TATE GRANT,** | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S MOTION TO REVOKE DEFENDANT'S PRETRIAL RELEASE**

On December 21, 2021, Pretrial Services Agency ("PSA") filed a Pretrial Violation Report (ECF 73) recommending defendant James Tate Grant ("the Defendant" or "Grant") be removed from PSA courtesy supervision in the Eastern District of North Carolina as a result of several serious violations, including commission of a crime and possession of an AR-15 assault rifle with over 60 rounds of ammunition. Codefendants Ryan Samsel and Grant were the first rioters to approach U.S. Capitol Police ("USCP") Officers guarding the U.S. Capitol on January 6. Grant arguably gestured to the crowd behind to follow them. The two defendants are among those who used violence to set off a chain of events that involved thousands of rioters invading the U.S. Capitol, injuries, deaths, property damage, havoc, and the delay of the certification of a presidential election. These events have led to long-lasting trauma for many of the police officers on the ground on January 6. Grant's underlying conduct in this case involved crimes of violence, specifically the assault of two different USCP Officers, Officers C.E. and D.C. He also entered the U.S. Capitol and went inside at least two private Senate offices. Now, while on pretrial release for these crimes, he was caught driving drunk with an assault rifle and over 60 rounds of ammunition in his vehicle, and initially attempted to flee from law enforcement. There are no conditions or combination of conditions that could ensure the safety of the community and

Grant's presence in Court if he were to remain released, and the Government requests that he be detained pending trial in this case.

## BACKGROUND

The Defendant was charged by complaint on September 29, 2021, with violating 18 U.S.C. § 111(a)(1) and (b) (Assaulting, Resisting, or Impeding Certain Officers Using a Dangerous Weapon or Inflicting Bodily Injury); 18 U.S.C. §§ 231(a)(2) and 2 (Civil Disorder); 18 U.S.C. § 1512(c)(2) (Obstruction of an Official Proceeding); 18 U.S.C. §1752(a)(1) (Entering and Remaining in a Restricted Building or Grounds); 18 U.S.C. § 1752(a)(2) (Disorderly and Disruptive Conduct); 40 U.S.C. § 5104(e)(2)(C) (Entering and Remaining in Certain Rooms); 40 U.S.C. § 5104(e)(2)(D) (Disorderly Conduct), 40 U.S.C. § 5104(e)(2)(F) (Act of Physical Violence), and 40 U.S.C. § 5104(e)(2)(G) (Parading, Demonstrating, or Picketing) (ECF No. 1). The Defendant was arrested in North Carolina on October 14, 2021, and on October 15, 2021, he had a first appearance and was released with conditions in the Eastern District of North Carolina (ECF No. 6).

The underlying charges arise from the Defendant's involvement in the riot at the U.S. Capitol on January 6, 2021, and his assault on U.S. Capitol Police ("USCP") Officers.  The Defendant (circled in red below) and his co-defendant, Ryan Samsel, were observed on video leading the first crowd of rioters to enter the restricted area on January 6 towards a metal barricade where several officers were positioned to prevent access to the Capitol Building.  This occurred at approximately 12:45 p.m., well before then-President Trump's speech had ended.  Samsel and Grant are believed to be the first two rioters of the thousands that followed to approach the restricted area near Peace Circle.  Samsel threw over the first unmanned barricade, and the two then walked past that barricade and approached the second barricade, which was manned by USCP

Officers. The barricades, put in place by the USCP to keep the public away from the Capitol Building while Congressional proceedings were underway, were clearly marked with large with "AREA CLOSED" signs.  As Samsel and Grant walked together toward the barricades, Grant appeared to wave the crowd behind the two of them to follow.



*Figure 1 – GRANT leading crowd towards barricades blocking access to Pennsylvania Walkway*

The video then shows Grant confronting an officer as more rioters approach the barricade. Grant yells at the officers and then, along with Samsel and defendants Stephen Randolph and Paul Johnson (*see United States v. Randolph, et al.*, Crim. No. 21-cr-332(PLF)), as well as other rioters, he lifts up the metal barricade and shoves it forward into the officers pushing them back from their positions and causing at least one officer (Officer C.E.) to fall to the ground into the steps behind her and suffer a head injury and another officer (Officer D.C.) to suffer an ankle injury.  As the barricade falls, another rioter (defendant Randolph) jumps over the fallen

barricade and attacks Officer D.C.  As the officers attempt to subdue Randolph from Officer

D.C., Grant interferes with their attempts to subdue Randolph by pulling Randolph back away

from the officers.  Officers come to the aid of Officer D.C. and one of them punches Grant.

Grant then gets up and attempts to step over the fallen barricade towards the officers.  The

officers make a brief attempt to lift the barricade back up, but the rioters, including Grant,

overwhelm the officers and move forward towards the Capitol Building, forcing the officers to

retreat from their position.



*Figure 2 – GRANT lifting and pushing barricade into USCP officers.*



*Figure 3 – GRANT interfering with officer attempting to apprehend Randolph.*

Another video obtained by law enforcement shows the Defendant walking towards the Capitol Building after the altercation at the barricade.



*Figure 4 – GRANT walking towards the Capitol.*

Video from the Capitol Building CCV system shows that the Defendant entered the Capitol Building at approximately 2:49 p.m. through a window that rioters breached earlier near the Senate

Wing Door.  Other video obtained from another rioter shows that the Defendant entered Senate offices S140 and S145 while he was inside the Capitol Building.

On October 21, 2021, the Defendant appeared via video before Magistrate Judge G. Michael Harvey, who ordered, in part, the following conditions of the Defendant's release:

- Must not violate federal, state, or local law while on release.

- Submit to supervision by and report for supervision to the Eastern District of North Carolina.

- Must not possess a firearm, destructive device, or other weapon.

- Must not use alcohol excessively.

- Submit to testing for prohibited substances if required by the pretrial services office or supervising officer.

- Participate in a program of inpatient or outpatient substance abuse therapy and counseling if directed by the pretrial services office or supervising officer.

- Prohibited from operating a motor vehicle while under the influence of alcohol.

(*See* ECF No. 9).

On December 15, 2021, a grand jury returned a nine-count Superseding Indictment against the Defendant and co-defendant Ryan Samsel, charging the Defendant in seven counts with violations of 18 U.S.C. § 231(a)(3) (Count One); 18 U.S.C. §§ 111(a)(1), (b), and 2 (Count Three); 18 U.S.C. §§ 1752(a)(1) and (4) (Count Five); 40 U.S.C. § 5104(e)(2)(F) (Count Six); 18 U.S.C. § 1512(c)(2) (Count Seven); 40 U.S.C. § 5104(e)(2)(C) (Count Eight); and 40 U.S.C. § 5104(e)(2)(G) (Count Nine) (ECF No. 69).

**Grant's Prior Criminal History**

Unlike many of the rioters, Grant has a criminal history and was on probation through the summer of 2019.  He was convicted in 2018 for tampering with a vehicle and was sentenced on July 16, 2018, to 30 days of incarceration and 12 months of probation.  Additionally, on September

4, 2021, a little over a month before his arrest in this case, Grant was involved in a very similar incident to the one that occurred in December of 2021. Because of that incident, Grant was charged with driving while impaired and carrying a concealed gun. Those charges, along with Grant's new charges that are the basis of the pretrial recommendation for termination of supervision, are currently pending in Wake County District Court.

**Grant's Recent Criminal Conduct on Pretrial Release**

On December 21, 2021, the PSA filed a Pretrial Violation Report (ECF No. 73) identifying four violations committed by the Defendant and recommending removal from PSA supervision. In the first violation, the Pretrial Violation Report alleges that on December 7, 2021, the Defendant was charged in Wake County, North Carolina with driving while impaired. According to the police report (attached hereto as Exhibit A), at approximately 5:00 a.m., an officer from the Garner Police Department responded to a restaurant in response to a suicide threat. While pulling into the parking lot, the officer observed the Defendant pulling out in a silver car. The Defendant put his hands out of the window and attempted to get the officer's attention. The officer approached the Defendant, who stated, "They probably called on me," and further explained his involvement in the "January 6th incident." Because the Defendant appeared intoxicated, the officer initiated a DWI investigation. While being placed under arrest, Grant attempted to flee. He then dropped to the ground and stated something to the effect of "Just kill me now." He then stated, "It's over."

In Grant's car, officers recovered an AR-15 assault rifle, 60 rounds of .223 ammunition, weapon accessories, and combat fatigues. The Defendant was arrested and transported to a local medical center. He was charged with Driving While Impaired, and his case remains pending in Wake County District Court.

In the second violation, the Pretrial Violation Report states that on two occasions (October 21, 2021, and November 30, 2021) the Defendant provided urine samples that tested positive for amphetamines. The PSA requests that the Court issue a warrant for the Defendant's arrest and recommends revocation of the Defendant's pretrial release. The Government concurs with the PSA's recommendation.

## ARGUMENT AND LAW

Under 18 U.S.C. § 3148(a), "[a] person who has been released under section 3142 of this title, and who has violated a condition of his release, is subject to a revocation of release, an order of detention, and a prosecution for contempt of court." Specifically, "[t]he judicial officer shall enter an order of revocation and detention if, after a hearing, the judicial officer finds that there is – (A) probable cause to believe that the person has committed a Federal, State, or local crime while on release; or (B) clear and convincing evidence that the person has violated any other condition of release." 18 U.S.C. § 3142(b)(1). Additionally, the Court can also issue such an order of revocation and detention if, "based on the factors set forth in section 3142(g) . . . , there is no condition or combination of conditions of release that will assure that the person will not flee or pose a danger to the safety of any other person or the community." *Id.* § 3142(b)(2)(A). Moreover, if there is probable cause to believe the Defendant committed a crime while on release, "a rebuttable presumption arises that no condition or combination of conditions will assure that the person will not pose a danger to the safety of any other person or the community." *Id.* § 3142(b)(2).

In this case, Grant cannot overcome the presumption. He has abused the release privileges given to him by the Court in several ways. He committed a crime by driving while intoxicated. He possessed a firearm (and not just any firearm – an assault rifle) and 60 rounds of ammunition and was carrying these items in his vehicle—despite being barred from doing so as a condition of

his release.  He initially tried to flee from law enforcement.  He used prohibited substances.  And, he did all this while had charges pending in Wake County for a very similar offense and while on federal supervision for his violent conduct at the U.S. Capitol. Grant's statements are of such a concerning nature that there is reason to believe he is a danger not only to the community, but also to himself.  The Defendant had an opportunity to respect the Government and Court's trust in his release pending trial, but has apparently made the conscious decision to abuse that privilege. Accordingly, the Government moves for the Defendant's revocation of his pre-trial release status pursuant to provisions of 18 U.S.C. § 3148(b).

<div style="margin-left:40%">

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:   *s/ Christopher D. Amore*
CHRISTOPHER D. AMORE
NY Bar No. 5032882
Assistant United States Attorney
555 4th Street, NW
Washington, DC 20530
(973) 645-2757
Christopher.Amore@usdoj.gov

*s/ April Nicole Russo*
APRIL NICOLE RUSSO
PA Bar No. 313475
Assistant United States Attorney
555 4th Street, NW
Washington, DC  20530
(202) 252-1717
April.Russo@usdoj.gov

*s/ Danielle Rosborough*
DANIELLE ROSBOROUGH
D.C. Bar No. 1016234
Trial Attorney, National Security Division
950 Pennsylvania Avenue
Washington, DC 20530
(202) 514-0073
Danielle.Rosborough@usdoj.gov

</div>

**Certificate of Service**

I hereby certify that on December 23, 2021, I electronically filed the Motion to Revoke the

Defendant's Pretrial Release with the Clerk of the Court of the District of Columbia using the ECF

system which will send notification of such filing to the following via electronic mail:

> **Peter A. Cooper, Esq.**
> Attorney for James Tate Grant

>  *s/ Christopher D. Amore*
> CHRISTOPHER D. AMORE
> Assistant United States Attorney
> Capitol Riots Detailee
> N.Y. Bar No. 5032882
> 555 4th Street, NW,
> Washington, DC  20530
> Phone: (973) 645-2757
> Christopher.Amore@usdoj.gov