UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | Case No. 21-cr-332-PLF |
| PAUL RUSSELL JOHNSON, *et al.*, | : | |
| | : | |

**REPLY IN SUPPORT OF PAUL JOHNSON'S MOTION TO SEVER
AND PRELIMINARY RESPONSE TO GOVERNMENT'S SEPT. 22, 2021 FILING
REGARDING THE SPEEDY TRIAL ACT**

## INTRODUCTION

The capacity of the government to process large caseloads *without hearings or trials* has resulted in an exponential increase in incarceration. . . the nation's mass incarceration has rightly been described as the great unappreciated civil rights issue of our time.

*The Trial Penalty Report* (Nat'l. Assoc. of Crim. Def. Lawyers)[1]

Today is Day 179[2] that Paul Johnson has lived under the ominous accusations of a federal Indictment (Dkt. No. 15) linking him to what many call the "Capitol Insurrection."[3] In 1974, Congress passed the Speedy Trial Act allowing for the accused to have a trial in 70 days. 18 U.S.C. § 3161(c)(1). While the exceptions to the Speedy Trial Act are many, the purpose of the Speedy Trial Act—and the Sixth Amendment—is to afford the accused a jury trial.

---

[1] Nat'l. Assoc. of Crim. Def. Lawyers, *The Trial Penalty: The Sixth Amendment Right to Trial on the Verge of Extinction and How to Save It* 10 (2018) (emphasis added and quotations omitted).

[2] On April 19, 2021, Mr. Johnson appeared before a magistrate judge in this District on these charges, thus starting his speedy trial clock under 18 U.S.C. 3161(c).

[3] *See, e.g., Capitol Insurrection Updates*, NPR.org (Feb. 26, 2021), https://www.npr.org/sections/insurrection-at-the-capitol; Marc Fisher et al., *The Four-Hour Insurrection: How a Trump Mob Halted American Democracy*, The Washington Post (Jan. 7, 2021), https://www.washingtonpost.com/graphics/2021/politics/trump-insurrection-capitol/

To date, there is no date for Mr. Johnson's jury trial—no opportunity for Mr. Johnson to exercise what John Adams called the "heart and lungs of liberty."[4] Nationwide only 3% of federal criminal cases go to trial.[5] A system of guilty pleas—not trials—has diminished the role that the Framers envisioned for jury trials as the best protection of liberty. That system of guilty pleas allows the government to process the large caseload of January 6th cases. The government charged over 671 people regarding January 6th.[6] John Adams would not recognize the current criminal legal system of guilty pleas. He might well agree that the virtual extinction of the trial has resulted in mass incarceration—the civil rights issue of our time.

For 179 days, Mr. Johnson has attempted to be fair and reasonable in permitting the government to develop its discovery plan and produce discovery to him. But now that it is apparent that the government will continue to rely on the voluminous discovery in the January 6th cases to stall defense attempts to obtain a trial date, Mr. Johnson must insist upon his statutory and constitutional right to a speedy trial. Those rights continue to be impaired as long as Mr. Johnson's speedy trial clock is connected with Mr. Randolph's. In order to ensure his constitutional right to a trial by jury, Mr. Johnson requests that this Court sever his case from that of his co-accused, Stephen Chase Randolph, and set a trial date within a reasonable time.

---

[4] John Adams, *The Revolutionary Writing of John Adams* 55 (C. Bradley Thompson ed. 2000).

[5] *Lafler v. Cooper*, 566 U.S. 156, 170 (2012).

[6] *See Capitol Breach Investigation Resource Page*, U.S. Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases (last visited Oct. 15, 2021).

# ARGUMENT

**I.      Joinder of the charges against Mr. Johnson and Mr. Randolph unfairly prejudices Mr. Johnson.**

The joinder of the charges against Mr. Johnson and Mr. Randolph unfairly prejudices Mr. Randolph on two fronts. First, it compromises his constitutional right to a speedy trial. Second, it introduces a very real risk that the jury will conflate the evidence between Mr. Johnson and Mr. Randolph, or convict Mr. Johnson based on the evidence against Mr. Randolph—this prejudicial spillover will deprive Mr. Johnson of a fair trial.

**A.      Requiring a joint trial would compromise Mr. Johnson's Sixth Amendment right to a Speedy Trial.**

Contrary to the government's assertions, jointly trying Mr. Johnson and Mr. Randolph would compromise Mr. Johnson's Sixth Amendment right to a speedy trial. The Court considers four factors to determine whether a defendant's Sixth Amendment right to a speedy trial has been violated: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right; and (4) prejudice to the defendant. *Barker v. Wingo*, 407 U.S. 514, 530 (1972). Mr. Johnson's case satisfies all four factors.

Length of Delay

With regard to the first factor—length of delay—although the government is correct that the delay must be "presumptively prejudicial" for the Court to proceed to the next three factors, the government overlooks the fact that length of the delay that will prompt a constitutional inquiry is "necessarily dependent on the circumstances of the case." *Barker*, 407 U.S. at 530–31. Applying this case-by-case approach, courts have found delays from six months to approaching one year to be presumptively prejudicial. *See United States v. Simmons*, 536 F.2d 827 (9th Cir.), *cert denied*, 429 U.S. 854 (1976) (six months); *United States v. Woolfolk*, 399 F.3d 590, 598 (4th Cir. 2005)

(eight months)  *State v. Almeida*, 54 Hawaii 443, 509 P.2d 549 (seven months); *State v. Corarito*, 268 N.W.2d 79 (Minn. 1978); *Doggett v. United States*, 505 U.S. 647, 652 n.1 (1992) (approaching one year).[7] Here, Mr. Johnson appeared before a magistrate judge in this district on April 19, 2021, and as of the date of the hearing on his Motion, six months will have passed, putting him in the range of a presumptively prejudicial delay. But there is no good reason for this delay. This is a straightforward case about a single day with the bulk of the evidence, mostly on video, already produced by the government. It is not a multi-defendant conspiracy case consisting of events spanning several months or years.

Further, the government contends that Mr. Johnson must show that the government is not prosecuting the case with "customary promptness" when a delay is presumptively prejudicial. (Govt's Opp'n to Def. Paul Johnson's "Mot. to Sever & Prelim. Resp. to Govt's Sept. 22, 2021 Filing Regarding the Speedy Trial Act" ["Govt's Opp'n"] at 7 (citing *Doggett*, 505 U.S. at 652)). The government is incorrect. It is the government—not the accused—who must overcome the presumption of prejudice, *see United States v. Marshall*, 669 F.3d 288, 295–96 (D.C. Cir. 2011) (citing *Barker*, 407 U.S. at 530–31). Here, the government cannot overcome presumption of prejudice, given the 179-day delay.

---

[7] The government cites *United States v. Taylor*, No. 18-198 (JEB), 2020 WL 7264070 (D.D.C. Dec. 10, 2020), in support of its argument that this Court should not find a Sixth Amendment violation because that defendant had been detained for 28 months pending trial. *Taylor* is readily distinguishable. There, the Court found the 28-month delay presumptively prejudicial, but also found that the defendant had failed to establish that the government was responsible for the delay, failed to address the third factor—his assertions of his speedy trial right, and, with regard to the fourth factor, focused only on his oppressive pre-trial incarceration. *Id.* at *8–10. Mr. Johnson, by contrast, has demonstrated that the government is responsible for the delays in his case, has invoked his right to a speedy trial, and asserts that his defense has been or could be impaired and that he has the anxiety of reputational harm and the stress of criminal charges hanging over his head.

The government cites its own filings to argue that its dealing with the "unprecedentedly complex discovery issues," (Govt's Opp'n at 7), demonstrates it has prosecuted Mr. Johnson's case with "customary promptness." They do not.

The government has not been customarily prompt for, at least, two reasons. First, instead of choosing a smarter way to deal with the root causes precipitating the events of January 6th, the government chose to charge 671 people in the largest criminal prosecution of the 151-year history of the Department of Justice.[8] Creating the largest prosecution in the history of the Justice Department is not customary and it cannot be done with promptness. Customarily, the government agrees to a trial date in a federal criminal case. Here, the government will not even agree to a trial date. The government is zero for 671 in trials to date for the January 6th indictments. That is not prompt. Second, the government's provision of discovery in Mr. Johnson's case has not been customarily prompt. At Day 179, the government is still providing the defense with terabytes of general video and document discovery. That the government chose to bring this volume of cases and produce this volume of discovery, without a plan to try any case within the 70 day limit set by the Speedy Trial Act, is not customary promptness.

Reasons for the Delay

As to the second factor—the reasons for the delay—those reasons fall squarely on the government. The government chose to prosecute 671 people. The government reviewed terabytes of discovery and decided that it would use that discovery in the prosecution of over 600 people. The government has requested continuances at every single court appearance, further kicking the discovery can down the road. The government has never agreed to a trial date.

---

[8] *See Capitol Breach Investigation Resource Page*, U.S. Dep't of Justice, https://www.justice.gov/usao-dc/capitol-breach-cases (last visited Oct. 15, 2021).

5

Mr. Johnson's Assertions of his Speedy Trial Right

The third factor—the assertion of the speedy trial right—also weighs in Mr. Johnson's favor. The government misstates the record with regard to Mr. Johnson's assertions of his right to a speedy trial. At the May 11, 2021, arraignment of Mr. Johnson, the government requested a 60-day continuance, while Mr. Johnson requested a 30-day continuance; the government's request was denied, and Mr. Johnson's request was granted. Minute Order (May 11, 2021). At that juncture, Mr. Johnson was willing to be reasonable, but once it became clear that there was no end in sight to the government's postponement of trial, Mr. Johnson unequivocally asserted of his right to a speedy trial on July 27, 2021 status conference.[9]

Prejudice

The fourth factor—prejudice—also weighs in favor of Mr. Johnson. The 6th Amendment's right to a speedy trial is meant to protect against the very things Mr. Johnson asserts are prejudicing him—impairment of his defense and anxiety and concern. *See Barker*, 407 U.S. at 532. Mr. Johnson's defense may indeed be impaired by witnesses' ability to recall events because witnesses' memories fade over time. *Id.* This includes Capitol Police Officer C.E. and other witnesses to Mr. Johnson's conduct on January 6th. In addition, Mr. Johnson's defense has already been impaired because many of the participants in the Stop the Steal rally have removed pictures and video content from the internet, making it difficult to impossible to track down witnesses or obtain video footage from different vantage points. The delay also prejudices Mr. Johnson from a resource standpoint. The resources of the world's most powerful government in human history far outstrip those of Mr. Johnson—a citizen who owns a tree-cutting business. While undersigned counsel

---

[9] Mr. Johnson agrees with the Government that only five days—between May 5 and May 11—have not been excluded under the Speedy Trial Act.

certainly appreciates the great skill of the country's federal public defenders, the Sixth Amendment guarantees Mr. Johnson the defense counsel of his choice; the government's delays ought not force him to choose an assistant federal public defender because the delay has depleted his ability to retain private counsel.

In addition, Mr. Johnson's only recourse for clearing his name—and show that he is not a "rioter" or "Three-Percenter" as the government has branded him—is to proceed to trial. There is also the constant stress of the criminal charges hanging over his head and the conditions of his pretrial release, which interfere with his ability to run his business, work on his farm, sleep at night without being awakened by the pre-trial software "app" installed on his phone, and generally live his life. The 6th Amendment was intended not only to protect against lengthy incarceration prior to trial, but also against "impairment of liberty imposed on an accused while released on bail." *United States v. MacDonald*, 456 U.S. 1, 2 (1982). Mr. Johnson now seeks to invoke his 6th Amendment protections due to the impairments on his liberty from the home detention that has been imposed on him.

Finally, assuming *arguendo* that the Speedy Trial Act has been followed in Mr. Johnson's case, compliance with the Speedy Trial Act does not bar a claim that Mr. Johnson's Sixth Amendment right to a speedy trial has been violated. 18 U.S.C. § 3173. Although it is true that courts have observed that it is the "unusual case" in which the Speedy Trial Act has been followed, but the Constitution has been violated, these are unusual times. *See United States v. Rice*, 746 F.3d 1074, 1081 (D.C. Cir. 2014) (collecting cases). Indeed, Chief Judge Howell's COVID-related Standing Orders automatically tolled the speedy trial clock for all criminal defendants in this

District from March 17, 2020 date through August 31, 2021.[10] Standing Order 21-47 at 7–8. The Chief Judge also excluded time from August 31, 2021 through October 31, 2021 under the Speedy Trial Act "for those cases that cannot be tried consistent with . . . health and safety protocols and limitations" detailed in Standing Order 21-47. As these COVID-related delays add up, we may well be entering the territory of the "unusual case" in which there has been no violation of the Speedy Trial Action, but there has been a violation of the Constitution, as argued above.

> B. **There is a serious risk that the evidence of Mr. Randolph's crimes could lead the jury to erroneously convict Mr. Johnson.**

The government contends that there is minimal risk of spillover prejudice in this case. (Govt's Opp'n at 10). However, the government's brief illustrates this very issue. First, the government repeatedly states that Mr. Johnson and Mr. Randolph acted jointly and contends that the grand jury "jointly" indicted them. (Govt's Opp'n at 1). But the government did not charge them with conspiracy and the government chose to pursue a joint indictment before a grand jury.[11] The fact that the grand jury returned a joint indictment *supports* Mr. Johnson's argument that there is a serious risk of a prejudicial spillover effect from the evidence against Mr. Randolph. Second, there is no evidence that Mr. Johnson and Mr. Randolph know each other, or even interacted with each other on January 6th.

---

[10] In the Government's Response Regarding the Application of the Speedy Trial Act, the government mischaracterizes Standing Order 21-47 with regard to the August 31, 2021 to October 31, 2021 timeframe. The previous COVID-related Standing Orders excluded time under the Speedy Trial Act, without limitation, from March 17, 2020 through August 31, 2021. Standing Order 21-47, however, limits the exclusion of time between August 31, 2021 and October 31, 2021 to "those cases that cannot be tried consistent with [the] health and safety protocols and limitations [in paragraph (1) of the Standing Order]." Thus, the time between August 31, 2021 and October 31, 2021 is not automatically excluded under the Standing Order 21-47.

[11] Indeed, Ryan Samsel, the defendant in *U.S. v. Samsel*, No. 1:21-mj-188, appears on the same video footage as Mr. Johnson and Mr. Randolph, but the Government has indicted him separately. Likewise, the government could have indicted Mr. Johnson separately.

Next, contrary to the government's assertions, the open-source video evidence in this case heightens the risk of spillover prejudice.[12] (*See* Govt's Opp'n at 11). Indeed, it is difficult not to "look beyond the defendant's own words [and conduct]" when the government's case theory turns, in part, on painting the actions of everyone at the U.S. Capitol on January 6th as a "riot." To further this theory the government has taken to incorrectly characterizing Mr. Johnson as a "rioter."

The government also contends that the risk of confusing the evidence is minimal in this case because there are only two defendants, but this is not what is at issue—what is at issue are the risks that the jury will cumulate the evidence of the separate crimes with which Mr. Randolph and Mr. Johnson are charged or improperly infer from Mr. Randolph's criminal disposition that Mr. Johnson is guilty of the crimes with which Mr. Johnson is charged. The jury may be able to understand the separate evidence against each of the accused, but nevertheless combine them or conclude that Mr. Johnson is guilty based on Mr. Randolph's conduct.

Finally, the government contends that a jury instruction would be sufficient to reduce the prejudice created by the spillover effect of evidence against Mr. Randolph related to his assault on Capitol Police Officer D.C. that Mr. Johnson was not involved in. Here, the government relies on a bald assertion that it will present "substantial and compelling evidence of guilt" against Mr. Johnson and Mr. Randolph separately. (Govt's Opp'n at 12). However, the government again overlooks the fact that the open-source video upon which it relies shows both Mr. Johnson's and Mr. Randolph's conduct.

---

[12] The government cites *United States v. Celis*, 608 F.3d 818, 846 (D.C. Cir. 2010), for the proposition that "present[ing] tape recordings of individual defendants" reduces the risk of spillover prejudice. (Govt's Opp'n at 11). In the cited portion of the opinion, however, the United States Court of Appeals for the D.C. Circuit was analyzing a defendant's argument that his trial was unfair because the government offered evidence of multiple conspiracies when he was only charge with one; it was not addressing a motion to sever. *Celis*, 608 F.3d at 845.

## II. Excluding time under the Speedy Trial Act with regard to Mr. Johnson is unreasonable under 18 U.S.C. § 3161(h)(6).

The excludable delay imputed to Mr. Johnson as a result of his speedy trial clock being linked to Mr. Randolph's is unreasonable because it has impaired his ability to defend himself. As discussed above, Mr. Johnson's defense may indeed be impaired by witnesses' ability to recall events and has already been impaired because many of the participants in the Stop the Steal rally have removed pictures and video content from the internet. Although Mr. Johnson is not being held in jail, he is detained on home detention, which restricts his movements, interferes with his ability to run his business and raise funds for his defense, and do other activities that used to be part of his daily life.

The government also invokes the preservation of prosecutorial and judicial resources to argue that the delay in Mr. Johnson's case is reasonable; however, it is unclear how a joint trial would actually achieve those aims. Mr. Johnson and Mr. Randolph do not know one another, and they traveled from completely different parts of the country to be at the Capitol on January 6th. While they are charged with many of the same counts, the conduct underlying each of those counts and the evidence presented regarding them will be different. Tellingly, the government has assigned different prosecutors to Mr. Johnson and Mr. Randolph.

Finally, contrary to the government's contentions, the granting of an ends-of-justice continuance under § 3161(h)(7) for the government to complete its discovery plan does not necessarily mean that this delay is reasonable under § 3161(h)(6). As addressed above, the government chose to bring an unprecedented number of criminal prosecutions related to January 6th. It cannot now rely on the "enormous amount of information it must review" to delay Mr. Johnson's trial. The government must find a way to discharge its disclosure obligations so that they do not result in unreasonable delays under the Speedy Trial Act. This may mean prioritizing

producing evidence related to people like Mr. Johnson who are invoking their statutory and constitutional speedy trial rights, and not simply forging ahead with its evolving discovery plan.

## CONCLUSION

WHEREFORE, for the reasons stated above, Mr. Johnson respectfully requests that the Court exercise its power under the Sixth Amendment, the Speedy Trial Act, and Federal Rule of Criminal Procedure 14(a) to sever his case from that of Mr. Randolph's and set a trial date in a reasonable time period.

Dated: October 15, 2021               Respectfully submitted,

                                      _____/s/_____
                                      Kobie Flowers (Bar No. 991403)
                                      BROWN GOLDSTEIN & LEVY, LLP
                                      1717 K Street, NW, Suite 900
                                      Washington, DC 20006
                                      Tel: (202) 742-5969
                                      Fax: (202) 742-5948
                                      kflowers@browngold.com

                                      Monica Basche (Bar No. MD0105)
                                      BROWN GOLDSTEIN & LEVY, LLP
                                      120 E. Baltimore Street, Suite 2500
                                      Baltimore, Maryland 21202
                                      Tel: (410) 962-1030
                                      Fax: (410) 385-0869
                                      mbasche@browngold.com

                                      *Counsel for Paul Russell Johnson*

## **CERTIFICATE OF SERVICE**

     I HEREBY CERTIFY that I caused a copy of this pleading was served on all counsel of record via the Court's electronic filing service.

                                        */s/ Kobie Flowers*
                                        Kobie Flowers

Date: October 15, 2021