# EXHIBIT 3

FD-302 (Rev. 5-8-10)

**FEDERAL BUREAU OF INVESTIGATION**

Date of entry 04/23/2021

A search warrant, issued in the United States District Court for the Eastern District of Virginia on April 12, 2021, was executed at at 6:00 AM on April 13, 2021.

Participating in the search warrant were members of the Federal Bureau of Investigation (FBI) Norfolk Field Office and the Richmond Field Office, the Newport News Police Department (NNPD), the Hampton Police Department (HPD), the Virginia State Police (VSP), the United States Marshal Service (USMS). The following individuals participated in the execution of the search warrant:

Sullivan, FBI
Ralph, NNPD/FBI
Frederick, HPD/FBI
Holsinger, FBI
Wilson, FBI
Pennycuff, JCCPD/FBI
Maldonado, FBI
Call, NNPD/FBI
D Smith, FBI
Lucy, HPD/FBI
E Smith, VSP/FBI
Bailey, FBI
Recker, USMS/FBI
Webb, FBI
Ellis, FBI
Spencer, FBI
Blaisdell, NNPD, FBI
Tucker-Jones, VSP/FBI
Baird, FBI
Hartman, FBI
Jones, FBI
D Mitchell, FBI
N Mitchell, FBI

Prior to the execution of the search warrant, the members of the search

Investigation on 04/13/2021 at (In Person)

File # 266T-NF-3388246 Date drafted 04/13/2021

by SULLIVAN JONES , MITCHELL

This document contains neither recommendations nor conclusions of the FBI. It is the property of the FBI and is loaned to your agency; it and its contents are not to be distributed outside your agency.

team completed pre-search medical tasks. All search team members were asymptomatic for the key symptoms associated with the virus known as COVID-19. All search team members donned appropriate Personal Protective Equipment (PPE), to include N-95 face masks or equivalent, and latex gloves.

The Norfolk SWAT team knocked and announced their presence at [REDACTED]. Shortly thereafter, PAUL JOHNSON (JOHNSON), [REDACTED] and three males (all minors) came to the door and were kept outside while the SWAT team secured the residence and other buildings on the property described as follows:

Building 1 - residence
Building 2 - outbuilding behind residence
Building 3 - outbuilding behind residence
Building 4 - farmhouse
Building 5 - two story garage

FBI SWAT medical personnel conducted a COVID-19 assessment of all residents within the residence. The residents were negative for symptoms.

At approximately 6:15AM, SA Sullivan spoke with [REDACTED], in the presence of SA Holsinger and SA Smith. [REDACTED] stated she wanted to call or text her father. SA Sullivan asked [REDACTED] to refrain from calling or texting anyone until the house was secured and agents could bring her and her children inside and explain the search warrant to them. [REDACTED] asked the agent where her body camera was and that she was going to start video recording the interaction. SA Sullivan explained her phone was included in the search warrant and if she did not refrain from using it at that time, SA Sullivan would have to take it from her. [REDACTED] stated it was her right to call an attorney. SA Sullivan reiterated once the residence was secured she would be glad to let her make that call. SA Sullivan removed the phone from her hands and placed two pieces of tape over the camera.

SA Sullivan retrieved a copy of the warrant from her vehicle and asked [REDACTED] to speak with her around the side of the vehicle so the children could not hear the details. [REDACTED] agreed and told her three boys not to talk to anyone. SA Sullivan assured her no one would ask the children any questions. SA Sullivan highlighted points in the search warrant attachment to [REDACTED] and told her she would provide a copy of the attachment and a receipt of all the property agents removed from the home. SA Sullivan informed [REDACTED] the agents did not have a warrant for the vehicles but would discuss that more with her later. [REDACTED] understood and stated she would not consent to a search of the vehicles.

Back in the presence of her children, SA Sullivan explained the search warrant process and that if anyone need to use the restroom, make breakfast,

or get a drink, to let an agent know as it was an officer safety matter. Everyone understood. SA Sullivan introduced [redacted] and her children to Victim Specialist Carol Wilson who would be sitting with them during the search.

After the residence was secured, the NF FBI SWAT team leader SA Jason Grabarcyzk briefed SA's Maldonado and Sullivan. SA Grabarcyzk stated there were several guns located in an open safe and under the bed in the master bedroom, and a long gun located in one of the children's rooms near the window. There were two medium sized dogs and all buildings on the property were cleared.

At approximately 6:40 AM, SA's Maldonado and Sullivan entered the residence and completed an initial walk-through of Building 1 and Building 5. Building 4 was deemed unsafe due to loose floor boards and other hazards; it was not searched. A walk through of the farmhouse was completed by SA David Mitchell who stated nothing of evidentiary value was in the farmhouse.

At approximately 6:58 AM the search team entered the premises. Suzanne Webb took entrance photos, and TFO Blaisdell kept a photo log. SA Hartman completed a sketch of Buildings 1 and 5. SA Sullivan maintained the evidence log.

During the search, SA's David Mitchell and Tim Jones ran the serial numbers of all the weapons in the residence through the Norfolk FBI Operations Center to verify none were stolen. No serial number associated with any of the weapons was reported stolen. The checks for each weapon are digitally attached.

At approximately 8:18 AM, SA Maldonado informed SA Sullivan JOHNSON consented to a search of all the vehicles except the motorcycles. The FD-26 signed by JOHNSON is maintained in SA Maldonado's interview FD-302 of JOHNSON. All the vehicles were registered to JOHNSON.

Shortly after receiving consent from JOHNSON, the search team began to photograph the vehicles. [redacted] came outside and stated agents did not have a warrant. SA Sullivan informed [redacted] JOHNSON had provided consent. [redacted] did not comment. At that point, SA Sullivan made the decision not to search the vehicles because JOHNSON was not present to revoke his consent and [redacted] was not agreeable to the vehicle searches. A red Toyota Forerunner was photographed only and no other vehicles were searched.

Search and seizure activities of Building 1 and 5 began at approximately 7:15 AM, and concluded at approximately 9:20 AM.

During the search of Building 1 and 5, FBI CART Darren Spencer imaged [redacted] cell phone and manually went through the eldest son's cell phone.

Both cell phones were returned to [redacted] and were not seized.

Twenty items of evidence were recovered and generally described as the following:
Item 1: (1) red wool hat (Room A)
Item 2: Explore One HD camera (Room A)
Item 3: Camouflage pants (x2) (Room B)
Item 4: earpiece and black Midland walkie-talkie with charger (Room B)
Item 5: Explore One HD camera with mount (Room B)
Item 6: Ladies sunglasses (Room B)
Item 7: Asp with case (Room B)
Item 8: Pyle black megaphone (Room N)
Item 9: urination device in gray bag (Room B)
Item 10: goggles (Room B)
Item 11: black backpack with patches and "stop the steal" stickers (Room B)
Item 12: Trump scarf (Room N)
Item 13: black vest plate carrier (Room B)
Item 14: black Motorola phone (Room J)
Item 15: black hat "more trees, less assholes" (Room N)
Item 16: 3 walkie-talkies - 2 green; 1 blue (Room A)
Item 17: can of black Mace pepper spray with handle (Room A)
Item 18: black ideacentre Lenova desktop; keyboard and mouse (Room A)
Item 19: (2) diamond earrings (on PAUL JOHNSON)
Item 20: Samsung phone (Room A)

At approximately 8:35AM, [redacted] father entered the residence and sat with her and the children. At approximately 8:48 AM, the father of the children came and picked them up and left the residence. At approximately 8:44 AM Captain McLaughlin with New Kent Police Department came and seized 10 labeled bags of marijauna from a refrigerator located in Room N, Building 5.

The search was concluded on the same day at approximately 9:20 AM. SA Sullivan briefed the items taken to [redacted] stated she did not know what the cameras were on the list. An agent pulled a camera from the packaging and showed it to her. SA Sullivan explained to [redacted] agents did not search the vehicles. A copy of the search warrant and the FD-597 was left with [redacted] at the same residence listed above. The search team left the residence immediately concluding the search.

The search warrant execution log, sign-in log, evidence collected item log, photograph log, alpha room letters, sketches, search photos, list of vehicles on the property, the list of serial numbers identified on guns in the residence, and the FD-597 will be maintained with the file.

*Agent Note: a photo of labeled bags of marijuana was taken by SA Sullivan and sent to SA Maldonado. The photo is digitally attached to this document.*

266T-NF-3388246

Continuation of FD-302 of ███████████ ███████████████████████, On 04/13/2021, Page 5 of 5