UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| v. : | Case No. 21-cr-537-JMC-3 |
| PAUL RUSSELL JOHNSON *et al.*, : | |
| : | |

**PAUL RUSSELL JOHNSON'S
MOTION TO MODIFY CONDITIONS OF RELEASE**
(Removal of Location Monitoring)

Paul Russell Johnson, through undersigned counsel, moves this Court to modify its June 8, 2021 Order Setting Conditions of Release (ECF No. 32) under 18 U.S.C. § 3145(a). Specifically, after a lifetime without harming anyone and 356 days of government supervision without missing a court date, Mr. Johnson requests that this Court discontinue the use of SmartLINK location monitoring in favor of telephone check-ins with the Pre-Trial Services ("PTS") Office. After two days of negotiations, the government opposes this Motion.

In support of this Motion, Mr. Johnson states as follows:

**FACTUAL BACKGROUND**

On April 12, 2021, the United States District Court for the District of Columbia issued an arrest warrant charging Mr. Johnson for acts allegedly committed in Washington, D.C. on January 6, 2021.

On April 13, 2021, FBI agents arrested Mr. Johnson at his Virginia home in the early morning hours by using a Special Weapons and Tactics ("SWAT") team, despite Mr. Johnson's lack of a criminal record. *See* Pretrial Services Report (ECF No. 13). At Day Two of a suppression hearing, Mr. Johnson testified that this SWAT team and other agents of the Federal Bureau of

Investigation ("FBI") intimidated him and his family as they searched Mr. Johnson's house with a Warrant the defense contends is unconstitutional; this Court is currently reviewing the constitutionality of that Warrant.

On April 14, 2021, Mr. Johnson appeared in federal court in the Eastern District of Virginia to be transferred to Washington, DC regarding this case.

On April 29, 2021, Mr. Johnson's detention hearing was held before a United States Magistrate Judge in this District. The Magistrate Judge ordered that Mr. Johnson be released subject to the condition, among others, that he submit to a location monitoring program and that he be restricted to his residence at all times with certain exceptions, such as employment and church services. (ECF No. 20).

The Court originally ordered that Mr. Johnson's location be monitored through a GPS ankle monitor. (ECF No. 20). This device interfered with Mr. Johnson's occupation as a tree trimmer and owner of a tree trimming company. The Court modified its original Order so that Mr. Johnson's location would be monitored through the SmartLINK cell phone application.[1] (ECF No. 31).

On March 14, 2022, Mr. Johnson filed a Motion to Modify Conditions of Release requesting that the Court permit him to travel to South Carolina to attend football camp with his son from March 25, 2022 to March 28, 2022. (21-cr-00332-JMC, ECF No. 83).

The same day, PTS filed a Report in response to Mr. Johnson's Motion to Modify Conditions of Release. (21-cr-332-JMC, ECF No. 84). In the Pre-Trial Services ("PTS") Report, PTS contends that Mr. Johnson has "reported minutes later" and missed check-ins through the

---

[1] On July 16, 2021, Mr. Johnson filed a Motion to Modify Conditions of Release requesting that the Court remove location monitoring and home detention as conditions of his release. (21-cr-332-JMC, ECF No. 33). The Court denied Mr. Johnson's Motion in favor of SmartLINK.

2

SmartLINK mobile application. Pre-Trial Servs. Rep. at 3, 21-cr-332-JMC, ECF No. 84. However, as Mr. Johnson's local Pre-Trial Services Officer stated, Mr. Johnson "has been in compliance" and "there have been some late check ins but none to the point where she deemed it to be a violation." Pre-Trial Servs. Rep. at 3.

The PTS Report further contends that:

> On March 11, 2022, Pretrial Services received a call *from a member of the community* confirming the *suspicions that Pretrial had* regarding the lag times with the defendant's check ins. Over this past weekend it was reported that the defendant was located at a restaurant (Uncle Julio's) down the street from his church. It is noted that the defendant had a Smartlink return call and had to run down the street to take a picture in front of the church that he has been allowed to attend. It has been reported that on January 20, 2022, the defendant traveled one and a half hours away from his home (unauthorized) to retrieve some mules. USPSO Tanya Smith indicated that she did not give the defendant permission to travel on that date and she also confirmed that there are mules on the defendant's premises.

Pre-Trial Servs. Rep. at 3 (emphasis added). In a subsequent telephone conversation with PTS on March 16, 2022, the relevant PTS officer stated that the "member of the community" is Mr. Johnson's ex-wife. As Mr. Johnson previously noted, PTS took this single report—that is from Mr. Johnson's vindictive ex-wife—to be true and used it to confirm its "suspicions."

On March 17, 2022, the Court granted Mr. Johnson's Motion to Modify Conditions of Release. (ECF No. 130). As a condition of his travel, Mr. Johnson conducted daily check-ins with his Pre-Trial Services Officer. Mr. Johnson travelled to and returned from South Carolina without incident.

Counsel for Mr. Johnson has learned that there are three options for location monitoring in the Eastern District of Virginia: (1) a GPS ankle monitor; (2) a radio frequency ankle monitor; and (3) the SmartLINK mobile application. Mr. Johnson switched from the GPS ankle monitor to SmartLINK because the GPS ankle monitor made it difficult for him to put on the boots and shin

3

pads he uses to climb trees for his tree-trimming business. Although the radio frequency ankle monitor is smaller than the GPS monitor, it would still interfere with Mr. Johnson's ability to put on the boots and shin pads he uses to climb trees. As both Mr. Johnson and PTS have addressed, the SmartLINK application does not always work or work properly. According to PTS, while they have used an ankle monitor to supervise individuals who must wear heavy work boots similar to Mr. Johnson's, PTS has not supervised a person who climbs trees as an occupation and whose safety is at risk if there is a fitting problem with the ankle monitor and the work boot.

Should the Court order Mr. Johnson to wear an ankle monitor, then his ability to work will suffer. Any compromise to Mr. Johnson's ability to work will compromise Mr. Johnson's ability to obtain the counsel of his choice under the Sixth Amendment and to provide for his wife and three children.

One alternative to location monitoring is telephone check-ins through the Washington, D.C. Pre-Trial Services Office. Another alternative is supervision through the Eastern District of Virginia, which can include home visits, visits to the PTS office in Richmond, Virginia, and drug testing. The Court would determine the number and frequency of the home visits and PTS office visits, as well as decide whether to order Mr. Johnson to submit to drug testing.

As of the filing of this Motion, the government has supervised Mr. Johnson for 356 days. During that almost yearlong period, Mr. Johnson has never missed a court appearance or been a danger to the community.

## **BAIL REFORM ACT**

As the Court knows, the Bail Reform Act ("BRA") of 1984 requires pretrial release under the least restrictive conditions that will reasonably assure the accused's appearance at court proceedings and the safety of the community. 18 U.S.C. § 3142(c)(1)(B). This Court has the

authority to amend the conditions of a release order to conform to the BRA's directives. 18 U.S.C. § 3145(a)(2). The BRA's directives are rooted in the Fifth Amendment's prohibition of deprivation of liberty without due process and the Eighth Amendment's prohibition against excessive bail. *United States v. Hir*, 517 F.3d 1081, 1086 (9th Cir. 2008) (citations omitted). Additionally, the BRA recognizes that accusations in an indictment are not convictions and the accused is presumed innocent. *See* 18 U.S.C. § 3142(j) (stating that "[n]othing in this section shall be construed as modifying or limiting the presumption of innocence"). Moreover, "[i]n our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Munchel*, 991 F.3d 1273, 1279 (D.C. Cir.), *judgment entered*, 844 F. App'x 373 (D.C. Cir. 2021) (internal citation omitted). "Detention cannot be based on a finding that the defendant is unlikely to comply with the conditions of release absent the requisite finding of dangerousness or risk of flight; otherwise the scope of detention would extend beyond the limits set by Congress." *Id.* at 1283. The Court has both a statutory and constitutional mandate to release the accused under the least restrictive conditions that will protect the safety of the community and reasonably assure his appearance in court.

In sum, the Court must consider two questions: 1) whether the accused is a danger to the community, by clear and convincing evidence, and 2) whether the accused is a flight risk, by a preponderance of the evidence. Here, Mr. Johnson is neither a danger nor a flight risk. Accordingly, this Court should minimize his release conditions to checking in with PTS and grant the defense Motion.

### **Mr. Johnson is not a danger to the community.**

After establishing by clear and convincing evidence that the accused poses an identified and articulable threat, the government must then also establish that "that no condition or

combination of conditions will reasonably assure the safety of any other person and the community." 18 U.S.C. § 3142(f)(2). In determining the appropriate conditions of release, a court shall consider: (1) the nature and circumstances of the offense; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release. 18 U.S.C. § 3142(g)(1)–(4). These factors support the modification Mr. Johnson seeks— and fail to establish by clear and convincing evidence that Mr. Johnson requires location monitoring to ensure the safety of any other person. 18 U.S.C. § 3142(e).

### *Nature and circumstances of the offense charged*

The first factor—the nature and circumstances of the offense charge—weighs in favor of the relief Mr. Johnson seeks. When examining the nature and circumstances of the offense charged, courts consider whether the offense charged is a crime of violence. 18 U.S.C. § 3142(g)(1). Out of the eight offenses with which Mr. Johnson is charged, only one—the alleged violation of 18 USC §§ 111(a)(1) & (b)—may arguably be a crime of violence, though it is an open question in the U.S. Circuit Court for the District of Columbia whether § 111(b) is categorically a crime of violence. *See United States v. Klein*, No. CR 21-236 (JDB), 2021 WL 1377128, at *6 (D.D.C. Apr. 12, 2021) (noting the "D.C. Circuit has not yet weighed in" but also recognizing that "every circuit to address the issue" has concluded that § 111(b) constitutes a crime of violence).

Even if this Court ultimately concludes that § 111(b) is a crime of violence, this fact does not automatically preclude the relief Mr. Johnson requests here. In assessing this factor, this Court may consider the factors Chief Judge of this District, Beryl Howell, set forth in *United States v. Chrestman*, No. 21-MJ-218 (ZMF), 2021 WL 765662 (D.D.C. Feb. 26, 2021), to help "differentiate the severity of the conduct among the hundreds of defendants charged in connection

with the events on January 6." *United States v. Owens*, No. 21-CR-286 (BAH), 2021 WL 2188144, at *7 (D.D.C. May 28, 2021) (quoting *Chrestman*, 2021 WL 765662, at *7–8). These factors include whether the accused: (1) "has been charged with felony or misdemeanor offenses"; (2) "engaged in prior planning before arriving at the Capitol"; (3) carried or used a dangerous weapon during the riot; (4) "coordinat[ed] with other participants before, during, or after the riot"; (5) "assumed either a formal or a de facto leadership role in the assault by encouraging other rioters' misconduct"; or (6) expressed "words" and made "movements during the riot" that included "breach[ing] the interior of the Capitol building," "injur[ing], attempt[ing] to injure, or threaten[ing] to injury others, or . . . damag[ing] or attempting to damage federal property," "actively threaten[ing] or confront[ing] federal officials or law enforcement" or "otherwise promot[ing] or celebrat[ing] efforts to disrupt the certification of the electoral vote count." *Chrestman*, 2021 WL 765662, at *7–8. The only factors that are arguably implicated in Mr. Johnson's case are one and six.

The first factor—whether the accused has been charged with felony or misdemeanor offenses—weighs in favor of removing the home detention and location monitoring requirements from Mr. Johnson's conditions of release. While Mr. Johnson has been charged with felony offenses, courts routinely release individuals charged with felonies on their own recognizance, including in cases in which the accused is charged with felonies arising out of the events of January 6th. *See* Order Setting Conditions of Release, *United States v. Kenneth Joseph Owen Thomas*, 21-mj-00448 (June 3, 2021), ECF No. 12 (ordering Thomas's release with no location restriction or location monitoring); Order Setting Conditions of Release, *United States v. Jason Douglas Owens*, 21-mj-00376 (Apr. 21, 2021), ECF No. 7 (ordering Owens's release with no location restriction or location monitoring and weekly check-in call with Pre-Trial Services); Order Setting Conditions

7

of Release, *United States v. David Alan Blair*, 21-cr-00186 (Feb. 22, 2021), ECF No. 6 (ordering Blair's release with no location restriction or location monitoring); Order Setting Conditions of Release, *United States v. Aaron Mostofsky*, 21-cr-00138 (Jan. 25, 2021), ECF No. 5 (ordering Mostofsky's release with no location restriction or location monitoring and weekly check-in call with Pre-Trial Services); Order Setting Conditions of Release, *United States v. Matthew Council*, 21-cr-00207 (Jan. 21, 2021), ECF No. 3 (ordering Council's release with no location restriction or location monitoring); *see also* Order Setting Conditions of Release, *United States v. Matthew Capsel*, 21-mj-00122 (Apr. 16, 2021), ECF No. 20 (ordering Capsel's release with curfew requirement and no location monitoring). Therefore, this Court should not place much weight on this factor. Not to mention, only one of the felonies with which Mr. Johnson is charged is arguably a crime of violence—the remainder involve alleged trespassing and interference with government proceedings or law enforcement. Further, Mr. Johnson has no criminal history or history of violent conduct and has complied with the conditions of his release (i.e., he has never missed a court appearance) for nearly a year. Finally, as the Court learned at the Suppression Hearing, Mr. Johnson is a licensed gun owner of multiple guns. As such, he has never violated the gun laws or injured a person with a gun. Accordingly, the Court should grant the defense's Motion.

The sixth factor—the expression of certain words and movements during the events of January 6th—also weighs in favor of the relief Mr. Johnson seeks here. While Mr. Johnson had a megaphone, he used it to amplify his voice in protest against the government and U.S. Capitol Police officers. While Mr. Johnson arguably confronted U.S. Capitol Police officers, he never threatened an officer, nor did he threaten to injure others or damage or attempt to damage federal property. The government alleges that Mr. Johnson pushed and pulled a metal barricade into a U.S. Capitol Police officer, injuring her. But review of the video evidence shows that Mr. Johnson was

not directly involved in this confrontation with the officers. In addition, Mr. Johnson never breached the interior of the Capitol building and, in fact, left the Capitol once the crowd began entering the Capitol building because he was concerned for his safety and the safety of his then-fiancée.

The other four factors weigh in favor of removing Mr. Johnson from location monitoring. Mr. Johnson did not engage in any prior planning—outside of the normal planning one does to take a trip; he did not come with weapons and tactical gear in preparation for storming the Capitol. He was in Washington, D.C. on January 6th to exercise his First Amendment right to engage in peaceful protest. He also did not carry or use a dangerous weapon, such as a "firearm, a large pipe, a wooden club, an axe handle, or other offensive-use implement." *Chrestman*, 2021 WL 765662, at *8. Nor is there any evidence that Mr. Johnson coordinated with other participants before, during, or after the rally. To date, Mr. Johnson has no information as to why he is accused with five people whom he does not know. Finally, Mr. Johnson did not assume a formal or a de facto leadership role in the assault by encouraging the other participants' misconduct. He came to protest and got caught up in the energy of the crowd. Once he saw that the crowd became not what he had expected, he left.

### *Weight of the evidence against the accused*

The second factor—the weight of the evidence against the accused—is the "least important" factor out of all the § 3142(g) factors, *Klein*, 2021 WL 1377128, at *10. This factor also supports Mr. Johnson's modification request. The bulk of the evidence is video of the events of January 6th. Even if this evidence equates to "overwhelming evidence of guilt" (it does not), that does not mean that removing location monitoring from Mr. Johnson's conditions of release

9

would not reasonably assure the safety of the community. *United States v. Taylor*, 289 F. Supp.3d 55, 66 (D.D.C. 2018).

### *History and characteristics of the accused*

The third factor—the history and characteristics of the accused—also weighs in favor of Mr. Johnson's Motion. As part of its examination of this factor, the Court must consider Mr. Johnson's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g)(3)(A). The Court also must consider "whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law." U.S.C. § 3142(g)(3)(B).

Mr. Johnson has strong ties to his community and is a devoted father and family man. He is a lifelong resident of the Lanexa, Virginia area. He currently lives on an approximately 14-acre family farm with his wife and three children. Not only does he maintain and manage the farm, but also he has owned and operated his own tree trimming business for nine years. As the Court will recall from the Suppression Hearing, that family business has been in Mr. Johnson's family for generations. He attends church with his family on Wednesdays and Sundays. In the Summer and Fall, assists with his sons' football team and takes them to and from practices and games on a near daily basis. He also has close relationships and regular contact with his parents, brother, and sister, all of whom live nearby. Moreover, it is undisputed that Mr. Johnson has essentially no criminal record; he has only a single misdemeanor marijuana possession conviction—a drug, while still illegal in Virginia, is now legal for recreational use in 16 states and the District of Columbia—

from 2013. He has no ties to extremist groups like the Proud Boys or the Oath Keepers. At the time of his arrest, Mr. Johnson was not on probation, parole, or other release pending sentencing or the completion of a sentence in any jurisdiction. Mr. Johnson has complied with his current conditions of release for nearly a year. Put simply, Mr. Johnson's history and characteristics demonstrate that he is a responsible family man with strong ties to his community.

### *The nature and seriousness of the danger to any person that would be posed by the person's release*

The fourth factor—the nature and seriousness of the danger that would be posed by Mr. Johnson's requested modifications to his conditions of release—weighs in his favor. Specifically with regard to individuals charged base upon their participation in the Stop the Steal Rally on January 6, 2021, the D.C. Circuit has held that "a finding of dangerousness must be predicated on a <u>concrete</u> determination that the defendant poses a <u>continued</u>, 'identified and articulable threat to the community' or to another person." *Klein*, , 2021 WL 1377128, at *12 (quoting *Munchel*, 991 F.3d at 1282) (emphasis in original). The government cannot make this showing regarding Mr. Johnson.

As discussed previously, Mr. Johnson has *no criminal history*, and certainly no history of violence, criminal or otherwise. Mr. Johnson's conduct on January 6th also stands in stark contrast to others who participated in events of that day. Mr. Johnson came to the Capitol with a megaphone to exercise his First Amendment right to protest; he did not bring any weapons with him, nor was he outfitted in a flack jacket or other military attire. He also did not enter the Capitol building and left the Capitol grounds when the crowd turned violent because he was concerned for his safety and the safety of his then-fiancée.

The Court must also consider the threat to the safety of an individual or the community in context. *Munchel*, 991 F.3d at 1280. In the context of the events of January 6th, Mr. Johnson came

11

to the Capitol to protest the certification of the 2020 presidential election. He did not engage in any prior planning for criminal activity and did not bring any weapons with him. He was only there to exercise his First Amendment right to protest. There is arguably zero chance that the set of circumstances that transpired that day—a protest of the congressional certification of a presidential election at the U.S. Capitol—will occur at some point in the future. Because Mr. Johnson's conditions of release would still bar him from coming to Washington, D.C. (with certain exceptions), keeping Mr. Johnson on home detention and location monitoring is not necessary to mitigate this very specific risk—they are not the least restrictive conditions of release based on the facts.

Even if the context were viewed more broadly—that there is a risk that Mr. Johnson would assault a law enforcement officer generally—the government cannot prove by clear and convincing evidence that Mr. Johnson poses a risk to law enforcement. As discussed above, Mr. Johnson has no criminal history, let alone a history of violence, including law enforcement. Mr. Johnson posed no danger to his community before January 6, 2021, and he poses no danger to his community now. Even if he arguably were a danger to law enforcement (he is not), location monitoring does not do anything to prevent an individual from engaging in violent conduct—they only prove to show an individual's whereabouts after the fact. SmartLINK, GPS monitoring, or radio frequency monitoring, therefore, is not the least restrictive means that will protect the safety of the community.

**Mr. Johnson is not a flight risk.**

Mr. Johnson is not, and has never been, a flight risk. The government has never asserted that Mr. Johnson is a flight risk, nor could it, let alone establish that he is by a preponderance of the evidence. *United States v. Vasquez-Benitez*, 919 F.3d 546, 551 (D.C. Cir. 2019) (citing *United States v. Vortis*, 785 F.2d 327, 328–29 (D.C. Cir. 1986) (per curiam)). Mr. Johnson has many ties to the community in which he lives. He is a 35-year-old native Virginian and has lived in and around York County, Virginia his entire life. He has no passport and has never been out of the country. Mr. Johnson resides on an approximately 14-acre family farm property in Lanexa, Virginia with his wife and their three children. Mr. Johnson has owned and operated a tree trimming service, E & E Tree Services, in Williamsburg, Virginia for nine years. The business has been in his family for generations. Mr. Johnson also has principal responsibility for the care and upkeep of his 14-acre family farm property. In addition, the Court recently granted Mr. Johnson's Motion to Modify Conditions of Release to travel to South Carolina to attend a football camp with his son. He travelled to and from the out-of-state camp without issue.

Mr. Johnson has never missed a court appearance in the just under a year that he has been under pre-trial supervision. Further, Mr. Johnson has retained counsel to face and contest the allegations in the Superseding Indictment—not run from them. Thus, the Court need not impose location monitoring to ensure that Mr. Johnson appears in court.

## **CONCLUSION**

WHEREFORE, for the reasons stated above, Mr. Johnson respectfully requests that the Court modify his current release conditions under 18 U.S.C. § 3145(a) to discontinue location monitoring in favor of telephone check-ins with Pre-Trial Services as the least restrictive means of complying with the Bail Reform Act.

Dated: April 4, 2022

Respectfully submitted,

/s/
Kobie Flowers (Bar No. 991403)
BROWN GOLDSTEIN & LEVY, LLP
1717 K Street, NW, Suite 900
Washington, DC 20006
Tel: (202) 742-5969
Fax: (202) 742-5948
kflowers@browngold.com

Monica Basche (Bar No. MD0105)
BROWN GOLDSTEIN & LEVY, LLP
120 E. Baltimore Street, Suite 2500
Baltimore, Maryland 21202
Tel: (410) 962-1030
Fax: (410) 385-0869
mbasche@browngold.com

*Counsel for Paul Russell Johnson*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a copy of this pleading was served on all counsel of record via the Court's electronic filing service.

Date: April 4, 2022                          */s/ Kobie Flowers*
                                             Kobie Flowers